THOMPSON–HOUSTON ELECTRIC COMPANY v. LOUIS S. BERG.

No. 509.

1. Secondary Evidence—Letter Press Copy.—A letter press copy of a letter is not admissible without laying the proper predicate for the introduction of secondary evidence.

2. Practice—Irrelevant Evidence—Harmless Error.—Error in the admission of irrelevant evidence not prejudicial to the appellant is harmless.

3. Allegata and Probata—Quantum Meruit—Proof of Value.—Upon a claim of quantum meruit for the value of services by a sales agent, the claimant may give in evidence, as tending to prove such value, the terms of a proposed contract between himself and his principal, specifying rates of commission for services of that kind.

4. Evidence—Admissions in Pleadings—Paper to be Taken as an Entirety.—Where admissions in the pleadings of the opposite party are offered in evidence, they must be taken and construed with all the limitations and qualifications accompanying them when made.

5. Principal and Agent—Commissions—Charge of Court.—Plaintiff and defendant entered into a contract which contemplated the formation of a corporation to sell plaintiff's products, to be furnished to and sold by the corporation at certain prices. The corporation was never formed, but pending an effort to form it, defendant was engaged as agent in selling the products of plaintiff, and in an action for the value of his services the issue was as to the rate of commission to which he was entitled. *Held*, that the court should have submitted whether or not the terms of such proposed contract should govern the rate of commission, and assumption in the charge that they did so control was erroneous.

6. Statute of Frauds—Original Guaranty—Debt of Another.—One purchasing goods through an agent demanded a certain guaranty which the principal declined to make, and thereupon the agent, in order to complete the sale and secure his commission, orally agreed to hold the principal harmless against any loss that might

arise from giving the guaranty. *Held*, not such a guaranty of the debt or default of another as comes within the inhibition of the statute of frauds.

7. **Evidence—Conclusion—Construction of Writing.**—It is error to permit a party to the suit to examine depositions and documents on file in the case and testify as to their meaning, and state his conclusions as to what facts are established thereby.

8. **Pleading and Proof—Quantum Meruit—Contract.**—Upon a count of quantum meruit by an agent for the value of services in selling the products of his principal, he can not by virtue of a contract agreement to that effect recover commissions on sales made directly by the principal in the territory assigned to the agent.

9. **Evidence—Value of Services—Subsequent Contract.**—Upon a claim for the value of services by an agent, a contract afterwards entered into by him with his principal and not contemplated at the time of the services, is not admissible in evidence.

10. **Principal and Agent—Commissions—Charge of Court.**—A contract provided that the agent should be entitled to commissions on sales only as the payments therefor should be actually made. Matter in avoidance of this provision was pleaded, alleging that the principal had waived it, and was estopped to claim it. *Held*, that the matter should have been proved and submitted to the jury, and it was error in the charge of court to virtually disregard such provision.

11. **Same—Value of Bond.**—Where the agent has agreed to receive his commissions in mortgage bonds given by the purchaser for the goods, his recovery from the principal on failure to deliver the bonds to which he is entitled should be for the actual value instead of the face value of such bonds.

12. **Same—Exclusive Territory—Sales by Principal.**—Where the principal assigns exclusive territory to an agent, agreeing not to sell goods in that territory, and afterwards violates such agreement, it is immaterial that the terms of such sale by the principal were agreed upon outside of such territory.

13. **Deposition—Inadmissible Evidence—Exclusion by Charge.**—Defendant attached as an exhibit to a cross-interrogatory a purported copy of an assumed letter from B. to S., the original of which, if it ever existed, would not have been admissible. The court permitted the exhibit to be read to the jury, but in the general charge instructed them not to regard "the letter from B. to S." *Held*, that the error in permitting the matter to go before the jury was not cured by such instruction.

14. **Evidence—Admission by Agent.**—A statement by an agent of plaintiff, that on final settlement with defendant his principal would be owing defendant, being merely a conjecture of the witness, and one which he was not shown to have the authority to express, was not admissible as evidence.

15. **Evidence—Abandoned Pleadings.**—Abandoned pleadings are incompetent to prove a material fact.

APPEAL from Bexar.  Tried below before Hon. W. W. KING.

*Barnard & McGown*, for appellant.—1.  Before a letter press copy of a letter written by the party offering it can be read in evidence over the objection of the opposite party, it must appear upon inspection to be competent evidence under some issue in the case, and not then unless the original has been properly accounted for, and if in possession of opponent, due notice must have been given it to produce the original upon the trial.  Dean v. Border, 15 Texas, 298; Foot v. Bentley, 44 N. Y., 171; Whart. on Ev., secs. 72, 93, 133, and note 2.

2.  It is improper for any witness, and more so a party, when timely objection has been made, to proceed to criticise or give an opinion upon the true interpretation of other evidence in the case, and the

court errs in permitting a witness to do so over such objection. Halff, Weiss & Co. v. Allyn & Co., 60 Texas, 280; Williams v. Davis, 56 Texas, 254; Railway v. Smith, 52 Texas, 186; Parnell v. Gaudy, 46 Texas, 200; Shifflet v. Morelle, 68 Texas, 388; Railway v. McGehee, 49 Texas, 489; Abb. Trial Ev., 227.

3. The allegata and probata must correspond, and a recovery can not be had on a cause of action not alleged in the pleadings, however well it may be supported by proof. Middlebrook v. Zapp, 73 Texas, 31, and authorities cited.

4. No authority as agent having been shown, and no ratification having been alleged or proven, the acts done by Ballard and the opinions of Ballard as to the rights of the parties herein are not admissible in evidence. Railway v. Ragsdale, 67 Texas, 28; Latham v. Pledger, 11 Texas, 445; McAlpin v. Cassidy, 17 Texas, 466; Railway v. York, 74 Texas, 368; City of Fort Worth v. Johnson, 84 Texas, 136; Pacific Co. v. Clough, 20 Wall., 540; Railway v. O'Brien, 119 U. S., 100; Mech. on Agency, secs. 714, 715.

5. When irrelevant and immaterial testimony has been introduced and afterwards attempted to be excluded or controlled in the charge, it is the party offering such evidence upon whom the burden rests to show that its effect was not injurious, or the admission of it is reversible error. Railway v. Ragsdale, 67 Texas, 28; Railway v. Levy, 59 Texas, 550; Tucker v. Hamlin, 60 Texas, 175; McCauley v. Long & Co., 60 Texas, 80; Ice and Manf. Co. v. Brewing Assn., 8 Texas Civ. App., 1.

6. The terms of the contract are not broad enough to include to Berg commission upon all the apparatus and appliances of appellant's manufacture which residents of Texas or Nebraska purchased from appellant in Boston, Mass., without the assistance, knowledge, or procurement of appellee, even though the apparatus and appliances are to be and are used in Texas. Burns v. Hill, 2 Wills. C. C., sec. 523, and cases cited; Dole v. Sherwood, Book 5, Law. Rep., 920; Armstrong v. Wann, 29 Minn., 126; Stewart v. Mather, 32 Wis., 644; Putnam v. How, 39 Minn., 363, McClain v. Paine, 49 N. Y., 561; Wylie v. Bank, 61 N. Y., 415; Earle v. Reid, 48 N. W. Rep., 894; Packing Co. v. Farmers' Union, 55 Cal., 606; Bish. on Con., sec. 1135.

7. The court erred in charging the jury that they would not consider, in making up their verdict, whether the items involved in this suit were matured or not; because the contract of November 19, 1890, under the terms of which most of the claims of defendant grew, provides that the compensation or commission to defendant should not be payable to defendant any faster, proportionately, than the purchase prices should be paid to plaintiff in cash, and the burden rested upon defendant to show that the purchase money had been paid on all contracts, for the making of which he claimed his compensation, and the evidence did show that the purchase money on some of them remained wholly unpaid. Durst v. McCampbell, 73 Texas, 410; McCormick v.

Bush, 47 Texas, 410; Leath v. Uttley, 66 Texas, 82; Younger v. Welch, 22 Texas, 417 and 425; Fosdick v. Schall, 99 U. S., 250; 3 Am. and Eng. Encyc. of Law, p. 429, and note 2; Smith v. White, 5 Neb., 405; Blean v. Messenger, 4 Vroom (N. J. Law), 499.

8. If appellee was working from April to November, 1890, upon a contract for a percentage commission, as alleged in his original answer, then he could not recover upon a quantum meruit as claimed in his first supplemental answer. Krohn v. Heyn, 77 Texas, 319; Gammage v. Alexander, 14 Texas, 414; Balley v. Casey, 60 Texas, 574; McGreal v. Wilson, 9 Texas, 426; 1 Ct. App. C. C., sec. 299; 2 Id., sec. 143.

9. The case was being tried upon plaintiff's original and third supplemental petition. The second supplemental petition had been abandoned and superseded by the third. The court properly rejected the offered allegation of an abandoned pleading. Coates v. Elliott, 23 Texas, 606; Perry v. Cole, 11 Texas, 671; Sweitzer v. Clafflin, 74 Texas, 671; Medlin v. Wilkins, 2 Texas Civ. App., 465.

*William Aubrey* and *Upson & Bergstrom,* for appellee.—1. Where a dispute arises as to the proper construction of a contract, the practical construction placed by the parties thereto upon the same is of great if not controlling importance.

2. Under the contract of November 19, 1890, defendant had the exclusive right of sale of the electrical apparatus manufactured by plaintiff during the period covered by said contract.

NEILL, ASSOCIATE JUSTICE.—Appellant, who was plaintiff below, sued appellee to recover certain money which it alleged appellee owed it, and the value of certain labor performed, and of goods, wares and merchandise which it alleged it sold appellee at various times. The total sum sued for is $27,220.03, together with interest thereon. Upon the sum sued for, the appellant in its original petition admitted a credit of $4163.10.

The appellee, in his original answer, denied the allegations in appellant's petition, except in so far as they were thereinafter admitted. He then alleged, that the appellant is indebted to him in the sum of $27,239.35, besides interest and damages, for this: That from the first of April, 1890, to December, 1891, he was employed and acted as appellant's agent, with full power and authority as such to sell and dispose of the products of appellant, and such other goods as it might consign to him, within and for the State of Texas; that by the terms of such employment, and by virtue of such agency, appellee was authorized to charge and entitled to receive from appellant a certain commission or discount from and off the list price of the manufactured products of appellant; that by the terms of such employment, and by virtue of such agency, appellee was the sole and exclusive agent of appellant in all the territory embraced in the State of Texas, and was entitled to receive the said commission or compensation for the sale

of any and all such manufactured products of appellant which might be made through appellee, or appellant, its agent, and employes within said territory during the period of appellee's agency; that as such agent appellee, at different times as specified in his answer, sold and delivered to various persons, firms, and corporations divers of the products and merchandise of appellant, of the reasonable and contract values respectively as set out in certain exhibits attached to such answer, and that in the course of such agency appellee paid out and disbursed certain sums of money, with the authority and for the account and benefit of appellant, which sums are also set forth in certain exhibits attached to said answer. The total amount due as commissions on sales, and of the sums of money paid out on account of appellant, is shown by the exhibits attached to be $53,078.61. By the exhibits attached the appellee admits an indebtedness to appellant of $25,839.26, which, credited on the amount claimed by appellee, would, according to the showing made by his exhibits, leave appellant indebted to him in the sum of $27,239.35, for which sum, together with interest thereon, he asked judgment.

To this answer the appellant filed a third supplemental petition, wherein it interposed the general denial, and specially set forth that subsequent to June 12, 1890, all the services rendered appellant by the appellee, if any, and all moneys expended by him for its benefit, were governed by two certain contracts by appellee, one of date June 12, 1890, and the other of date November 19, 1890. The terms of both of which contracts were therein fully pleaded, and copies were attached as exhibits. The appellant also attached copies of the price lists attached to said contracts, which are identically the same as those attached to the appellee's original answer, and then proceeded to admit certain of the items claimed by appellee as correct commissions due him under and by virtue of the express terms of said contract, and alleged that many of the commissions claimed by him had never been earned and many were not payable under the terms of the contracts, because the purchase price had not been paid in full or in part as the terms of said contracts required to be done before the commissions were payable to appellee.

The appellant also alleged that it had been compelled to make good certain guaranties as to feeder wire, etc., which guaranties the appellant had undertaken at the special instance and request of appellee, and upon his positive and distinct agreement to hold appellant harmless upon said guaranties, etc.

The appellant's third supplemental petition, by its admissions based upon the validity of said contracts, reduces the claim of appellant against the appellee, after allowing all proper and just setoffs and credits under the terms of the contracts, to the sum of $2998.45, and interest and costs.

The appellee to this files his first supplemental answer, in which he urges his general denial, and then admits that the contract, of date

November 19, 1890, covering the term of his service from December 1, 1890, to December 1, 1891, known as exhibit "A," attached to appellant's third supplemental petition, remained a subsisting agreement between the parties governing their relations as principal and agent during said year, except in so far as the same was afterward changed. The appellee then alleges that all services rendered by him to appellant were so rendered at its instance and request, and were reasonably worth the moneys charged appellant by him for them, i. e., alleged that all services rendered between December 1, 1890, and December 1, 1891, were rendered under the contract of date November 19, 1890, and all services rendered and moneys expended from April 1, 1890, to November 19, 1890, were rendered under the quantum meruit; and the moneys were necessarily expended, and that appellant received the benefits of both. Appellee did not deny the execution of the contract of date June 12, 1890, but ignored its existence. Appellee alleges specially, that if he ever promised or undertook to pay, guaranty, or make good the guaranties as to feeder wire, etc., as alleged by appellant, that such was the oral promise of himself to answer for the debt, default, or miscarriage of another, to wit, the street railway company. Appellee alleges specially in answer to appellant's allegation concerning the nonpayment by purchasers of purchase money in whole or in part, that the appellant has long since ascertained the solvency of all such purchasers, in most instances has extended the time of payments, in all other cases has obtained ample security therefor; therefore, no risk remaining to the appellant, the appellee should not be compelled to adhere to the provision of his contract relative to that matter.

The trial resulted in a verdict and judgment, that appellant take nothing from appellee, but that appellee have and recover against the appellant $29,417.01.

As a number of the assignments of errors relate to and require consideration of the alleged contracts of June 12 and November 19, 1890, we will, for convenience, before discussing the assignments, insert so much of them here as may be necessary to have them understood. They are respectively as follows:

"*Mr. L. S. Berg, City:*       "Boston, June 12, 1890.

"Dear Sir—In pursuance of our conversation up to date, it is mutually understood that you and your associates at San Antonio will form a construction company, and that the Thompson-Houston Company will furnish it apparatus, the following being a general outline agreement to be formally entered into at a later date. The company to be called the Southwest Thompson-Houston Electric Company, with a capital stock to be paid up at once, and the balance when necessary. The territory in which the above company is to operate to be Texas, New Mexico, and Arizona. The proposed company to have the exclusive sale of the Thompson-Houston arc direct incandescent

apparatus, the alternating incandescent lighting apparatus, electric railway, and stationary motor apparatus.

"The price to the proposed company to be as follows:"

[Here follow the prices of the different articles of goods which the proposed company is allowed certain discounts.]

"CHICAGO, November 19, 1890.

"L. S. Berg, San Antonio, Texas:

"DEAR SIR—The proposed organization of the Southwest Thompson-Houston Company having fallen through, and the project having been abandoned on both sides, we make you the following proposition to represent us in the sales of railway, arc, and incandescent lighting apparatus, and stationary motors, in the State of Texas.

"You are to represent this company as sales agent in Texas for the period of one year from December 1, 1890, in the sale of the above named apparatus at the prices set forth in the attached schedule, and such additions as may be made thereto from time to time. You are to exploit the above named manufactures in the State of Texas continually and aggressively, and as fully as this company could do so through any representation that it might be able to secure in any other way. You will be limited, however, in the sale of arc and alternating incandescent apparatus, to the following points: Fort Worth Packing House Company, Fort Worth, San Antonio, Denton, Henrietta, Austin (State Capitol), Quanah, Wichita, and Ennis, and such other places as may from time to time be indicated by the Chicago office.

"You are to defray all of the expenses in connection with the selling of the above apparatus, and your compensation is to be solely the price secured over and above the prices fixed in the attached schedule.

"All propositions submitted, and all contracts made, are to be in the name of the Thompson-Houston Electric Company, but no proposition or contract shall become binding upon the company until it has been submitted to the Chicago office, and received the approval of the manager of that office.

"Upon the closing of the contract, the proper amount of commission will be credited to your account; the credit to you of the commission, however, at that time, and prior to the receipt by the company of the cash from the purchaser, will be regarded as a matter of accommodation and convenience, rather than an obligation of the company to pay until cash settlement is made—the idea being that the financial responsibility of the purchaser can not always be determined by the Chicago office, and we desire to have you assume the risk in connection with the contract to the extent of your commission in case of failure to make a cash settlement with the purchaser.

"In case where the company regards it to its interest to do so, it shall have the right to send an agent to represent it, alone or in conjunction with you, on any special piece of work that may come up,

with the understanding, however, that such agent will co-operate with you, and proper credit be made to you, less the expenses of said agent, if the contract is secured.

"You agree not to sell apparatus of any description in the territory named below the prices that this company may from time to time name; provided, however, that you will not be required to sell at a higher price than this company is at the same time ordinarily charging its local companies for similar apparatus.

"This company agrees that if the prices from time to time ordered by it to be charged by you shall be such as to reduce your gross profit, calculated by percentage on the prices exhibited in the schedule attached, below the profit to be made at the date hereof, then this company will reduce the schedule prices correspondingly, so that the gross profit to be made at any given time shall be as large a percentage of the then schedule prices as the margin of present selling prices to local companies is on the prices made to you at the date hereof, and as set forth in the schedule annexed.

"You are to cause the purchasers of apparatus to execute the usual form of contract and license A for lighting contract, and contract and license M in railway contracts, or any forms that may from time to time be submitted.

"This contract shall be binding upon you and this company. Your signature and that of B. E. Sunny hereto shall constitute a contract binding for the period named.

"Yours truly,

"THOMPSON-HOUSTON ELECTRIC CO.
"B. E. SUNNY, Western Manager.
"L. S. BERG,

"All prices f. o. b. cars Chicago and Lynn.    L. S. B."

Schedules of prices are attached to this contract.

This last contract shows upon its face that the organization of the proposed Southwest Thompson-Houston Electric Company had been abandoned; if not by mutual consent of the parties to this action, that both parties recognized and acquiesced in its abandonment. As neither party in its or his pleadings charges the other with the failure of the organization of the company, nor claims damages on account of such failure, why the proposed corporation never came into existence is a matter of no moment. Therefore the correspondence and negotiation between the parties relative to the matter complained of in appellant's first assignment were not pertinent to any issue in the case, and should not have been admitted in evidence. If, however, the letter of October 8, 1890, from appellee to B. F. Sunny had been relevant, the letter press copy introduced in evidence would not have been admissible without laying the proper predicate for the introduction of secondary evidence. Foot v. Bentley, 44 N. Y., 171. The letter was not of such a character as was calculated in the least to prej-

udice or influence the jury in reaching their verdict, and the error committed in introducing the copy was perfectly harmless, as was any other error which may have been committed by the court in admitting testimony in relation to the cause of the abandonment of contract dependent upon the organization of the proposed company.

Some of the sales made by appellee of appellant's goods were made prior to June 12, 1890, and a number of them were made between that date and December 1, 1890. In his pleadings, appellee seeks to recover his compensation upon a quantum meruit; and the appellant in its supplemental petition averred, and on the trial contended, that the proposed contract of June 12th governed the transactions between the parties occurring prior to December, 1890, and that by it the compensation of appellee for his services should be determined; and that, on appellee's claim for a quantum meruit, neither the terms of the proposed contract nor appellant's admissions in its pleadings can be considered in determining the value of the services performed by the appellee, but that evidence aliunde the contract and admissions alone should be considered. We can not fully agree with appellant in these contentions. At common law, a party could sue in assumpsit to recover the stipulated price due on special contract when the contract had been fully executed, and nothing remained to be done but the payment of the agreed price. Canal Co. v. Knapp, 9 Pet., 565; Dermott v. Jones, 2 Wall., 9; Williams v. Railway (Mo.), 20 S. W. Rep., 638. While the common law forms of action do not obtain in this State, the principle of evidence remains unchanged, and it has been recognized by the Supreme Court, in holding, in an action on quantum valebat for goods sold, that evidence that they were sold at an agreed price was admissible as proof of value. Ballew v. Casey, 60 Texas, 573. If therefore as a matter of fact the appellee was, in the services rendered appellant, acting in contemplation of the proposed contract of June 12th, and it was contemplated by the parties that he should, so far as it could be made applicable to their dealings, be governed by and remunerated in accordance with its stipulations, the value of his services could be determined by such contract, notwithstanding his allegations of a quantum meruit; and as the sales by appellee of appellant's goods were made by separate and distinct contracts, and specific allegations of the value of his services performed in making each sale were averred, the admissions of appellant in his pleadings of the amounts, or commission, due appellee on the several contracts of sale consummated by him, could also be taken and considered as evidence of the value of his services. But when the terms of the proposed contract, or the admissions of appellant, are looked to for the purpose of establishing the value of such services, all of the contract which relates to or in any way tends to show what compensation was contemplated should be taken and considered, and also admissions in the pleadings. In other words, if the contract is relied upon as evidence, that part which suits the party invoking it can not be considered and

the portion that militates against him rejected. It must be taken with its burdens, as well with its benefits. Nor can the admissions be taken unqualifiedly, but must be considered with all the limitations and qualifications accompanying them when made. Applying these principles to this case, if the terms of the contract of June 12th are to be considered in estimating the compensation claimed by appellee, the discount or commissions therein allowed the proposed company can not be recovered by the appellee on the ground that he occupied the same relation to appellant that the company would have had it been organized, unless it is shown that he paid for or took and indorsed satisfactory paper made by other parties for the sales of appellant's products. This the contract provided the proposed company and its directors should do; and if he claims he occupied the same position to the appellant that the company would if it had been organized, he must show that he performed the obligations to appellant imposed by the proposed contract on the company. And as some of the admissions as to the amounts due him by appellant for commissions on sales made between June 12th and December, 1890, are limited and qualified by the terms of the proposed contract, these admissions can only be taken with such limitations and qualifications. In this case, wherever evidence was offered in support of appellant's pleadings, or admissions were made by them, such evidence and admissions, if deemed beneficial to appellee, were seized upon and used in support of his demands, over exceptions of appellant, without reservation or qualification. It is believed that enough has been said to demonstrate that such proceedings were erroneous, and prejudicial to appellant.

The issue as to whether appellee or appellant, in the transactions between them occurring between June 12th and 19th of November, 1890, acted under and were governed by the terms of proposed contract of the first date, was made by the pleadings and evidence, and the question should have been submitted to the jury in an appropriate charge. The appellant sought to have the issue submitted by asking special charge number 5, which was refused. The charge as asked should not have been given, for it is upon the weight of evidence, in that it asserts that the evidence shows that the business between the parties was carried on during the period between the dates mentioned under the contract of June 12th. This was the very issue to be determined, and an appropriate charge on it would not have assumed that it was established. Yet the rejected charge, defective as it is, when considered as a whole, was sufficient to call the attention of the court to an issue which was a leading one in the case, and to suggest the necessity of its submission under a proper charge. The view may have been entertained by the trial court, which is plausible, that from the very nature of the terms of the proposed contract they could not have been applied to the dealings between the parties; and hence it would have been improper to submit as an issue that which from the

nature of the instrument could not exist. The proposed contract contemplated that a company should be organized with a capital stock of $100,000, of which $50,000 should be paid upon its organization; that the company should operate in Texas, New Mexico, and Arizona, and have there the exclusive sale of certain products of appellant. The company was to purchase a certain amount of appellant's products annually at prices fixed by the contract, and make payments in the manner therein specified; and was to agree that at no time it would sell the goods so purchased below the prices that appellant should name from time to time. From this it seems that the profits, contemplated by the contract to be made by the proposed company, would be the difference between the prices at which it took the goods from the appellant and for which they were to be sold. The evident purpose on the part of appellant in the organization of the company was to effect through it a sale of its products and security for the purchase money. Its organization would have been to appellant's advantage. If then the appellant, in anticipation of the formation of the company, allowed appellee to sell its goods at prices in excess of those at which they would have been furnished the company had it been organized, it can not in justice withhold from him the profits on the sales which would have gone to the company had it been in existence and effected such sales. Nor do we think that if the appellee, in making the sales of appellant's goods, was acting in anticipation of the formation of the proposed company, he can be heard to say that the terms of the proposed contract, so far as they are applicable, did not govern. If the proposed contract did not affect the parties in their dealings with one another, it was incumbent upon the appellee to prove the value of the services independent of its terms. Hence the importance of submitting to the jury the question as to whether or not the business transacted between the parties up to November 19, 1890, was conducted under the terms of the proposed contract.

Before the jury could properly determine what compensation, if any, the appellee was entitled to on his claim for services rendered prior to the 19th of November, 1890, it was necessary for them to ascertain from the evidence and pleadings whether such services were performed under the terms of the proposed contract of June 12th, or independent of and without regard to them. If rendered under the terms of the proposed contract, it, together with the admissions of appellant and the evidence introduced upon the theory that its terms governed the parties in their dealings, would control the jury in determining the amount appellee was entitled to recover. If not rendered under the proposed contract, neither its terms, admissions made, nor evidence introduced upon the theory that the terms of the contract governed, could be considered. A correct disposition of the case was necessarily dependent upon the submission and determination of this issue. Instead of charging the jury to find upon it, the

court in its charge first informs the jury that certain amounts with interest, amounting in the aggregate to $29,940.63, are admitted by the appellee as due appellant, and that certain sums with interest, aggregating $40,033.63, are admitted by the appellant as due appellee. This last sum includes large amounts admitted upon the theory that the terms of the proposed contract governed the parties and determined appellee's compensation.

The transactions between the parties occurring prior to November 19, 1890, are designated as (1) the first West End contract; (2) the first San Antonio Railway contract, the second West End contract; (3) the second San Antonio Street Railway contract; (4) the Gas Company's contract; (5) the Alamo Street Railway Company's contract. On the first of these, the appellee claimed the appellant was due him $3431.25. The appellant, on the theory that the terms of the proposed contract of June 12th governed, admitted in its answer an indebtedness of $2401.25, and the court in the first paragraph of its charge informed the jury positively that the appellant had admitted $3026.25—$625 in excess of the admission. On the second, the appellee claimed $4236.10; the appellant, on the same thing, admitted $3920.75; the court charged the jury that appellant had admitted the whole amount claimed, which is $315.35 in excess of the sum admitted. On the third contract the appellee claimed $10,127.86. The appellant did not directly admit that it was due any sum on this transaction, but in answer to appellee's claim pleaded in reconvention and setoff $7336.75; the court informed the jury in its charge that appellant had admitted due appellee on this transaction $10,127.46. It is true that the matters pleaded in offset were submitted to the jury in a subsequent part of the charge, but this did not obviate the error committed in charging as admitted by appellant a sum which was not. We will recur again to other points arising in the records relative to the second San Antonio Street Railway contract in a subsequent part of this opinion. On the fourth, the amount charged as admitted is identical with that claimed by appellee and acknowledged by appellant. On the fifth, the amount claimed was not stated in the charge as admitted. The questions growing out of it will also be considered subsequently. From this it is seen that, even if it was correctly assumed that the admissions as to the amounts due were not made on the hypothesis that the proposed contract of July 12th governed the parties as to these matters, the amounts admitted are not correctly stated in the charge.

We will now return to the second San Antonio Street Railway contract. It will be remembered that this is one of the transactions occurring prior to the 19th of November, 1890, and of which appellant claimed was governed by the terms of the proposed contract of July 12th, and for which appellant claimed compensation on a quantum meruit. The attached exhibit to appellant's answer setting out his claim in this matter is as follows:

"THOMPSON-HOUSTON ELECTRIC COMPANY

"In account with L. S. BERG, State Agent.

"Specifications of items sold the San Antonio Street Railway Company, October 30, 1890:

| | List Price | Dis. Pur. | Net | Total |
|---|---|---|---|---|
| "1 80-H. P. generator........ | $5,000 | 30% | ............ | $3,500.00 |
| "15 car equipments.. ....... | 850 each | ............ | ............ | 12,750.00 |
| "30 15-H. P. motors......... | 1,700 | 30% | $1,190 each | 35,700.00 |
| "1 sta. equipment........... | 675 | ............ | ............ | 675.00 |
| "Overhead devices........... | 2,820 | 30% | ............ | 1,974.00 |
| "Extra motor parts.......... | 641 | ............ | ............ | 641.00 |
| | | | | $55,240.00 |

"Price cut by B. E. Sunny, western manager Thompson-Houston Co...  $2,243.75

"Making price ordered to be charged by Thompson-Houston.........  $52,996.25

"Commission earned by L. S. Berg on above sale:

| | List | Total | Dis. Pur. | Dis. Berg | Net Berg | |
|---|---|---|---|---|---|---|
| "1 80-H. P. generator.. | $5,000 | ........ | 30% | 40% | 10%— | $ 500.00 |
| "15 car equipments .... | 850 | $12,750 | ........ | 35% | 35%— | 4,462.50 |
| "30 15-H. P. motors ... | 1,700 | 51,000 | 30% | 45% | 10%— | 5,100.00 |
| "1 sta. equipment ..... | 675 | 675 | ........ | 35% | 35%— | 236.25 |
| "Overhead devices..... | 2,820 | 2820 | 30% | 35% | 5%— | 141.00 |
| "Extra motor parts.... | 641 | 641 | ........ | 35% | 35%— | 224.35 |
| | | | | | 35%— | $10,664.10 |

"Amount of contract at regular price................................. $55,240.00

"19.29% on contract price, or commission earned...................... 10,664.10

"Amount of contract after cut made by Thompson-Houston Company is

deducted........................................... ............... . 2,243.75

$52,996.25

"19.29% on contract price, or commission earned................ ...... $10,127.86

"Interest due on this same from October 7, 1892, at which time settlement

was made by San Antonio Street Railway Company................  ————

"Actual amount of this contract................ ........... ......  ————

"The excess above $52,996.25 being made upon articles furnished by the Thompson-Houston Co., but not manufactured by them."

We will remark here that this exhibit, if in the proper form, seems to indicate an agreement between the parties from which the appellee has estimated the compensation due him, rather than a claim for the value of services to be determined upon a quantum meruit. However, the exhibit must be taken and construed in connection with the pleading to which it is attached. The appellant in answer to this claim averred that appellees had failed to credit it with the difference between 5 per cent on $2820 worth of overhead devices, and 5 per cent on $2641 of same. That when appellee made the contract with the San Antonio Street Railway Company, it was made subject to the approval

of the western manager of appellant for the sum of $78,000, and was submitted to said western manager for his approval, and the manager refused to approve it, because the amount agreed upon by appellee and the street railway company was not authorized by appellant nor any of its agents, and was below the price at which the appellant could profitably furnish the machinery, material, and labor contracted for, and far below what the appellee was authorized to contract for. That the plaintiff could not profitably furnish the machinery, material, and labor contracted for between the appellee and street railway company for less than $81,243.75, and so informed the appellee, and also informed him that the contract would not be approved by the western manager. That thereupon the appellee, being very anxious for the approval of the contract, and in consideration of the approval of the contract, and of receiving, as he believed, a large profit on the last aforesaid sum, agreed with appellant to pay the difference to plaintiff out of his profit upon said contract when the same should become due, which should be found between $81,243.75 and what appellant could induce the street railway company to pay; and upon this agreement, and another agreement hereinafter set forth, the appellant did enter into and approve the aforesaid contract between appellant and the San Antonio Street Railway Company at the price of $79,000, and that therefore appellant is entitled to be credited by appellee with the sum of $2243.75 more upon such contract, said street railway company having agreed to pay $79,000 therefor, instead of $78,000 named in the contract. That appellant refused to accept, enter into, or approve said contract with the guaranty which appellee had placed therein as to loss of potential upon the long line, and appellee urged the plaintiff to make and approve the contract, and in consideration of the benefits to him upon the same by reason of the profits thereon, appellee, to induce appellant to enter into and approve said contract, stated that the loss of potential on the long line would not be much, and urged the appellant to forego that objection to the contract, and to enter into and approve it, which appellant refused to do; that then appellee agreed with appellant that if the appellant would approve such contract, the appellee would hold it harmless upon such guaranty, and would stand good for and repay to appellant, out of the profit upon the contract, whatever extra expense it would be compelled to incur in consequence thereof. That by reason of said guaranty and the fulfillment thereof by appellant, it was compelled to expend, and did expend, extra money to fulfill said contract to the sum of the difference between $8000 and $2970 figured in the estimate for feed wire, to overcome said loss of potential. Wherefore it claimed a credit of $5093 more upon appellee's profit. That had not appellee made the foregoing agreement with appellant, it never would have approved said contract. That it approved and fulfilled the contract solely in consideration of the foregoing agreements and undertakings on behalf of appellee, and is therefore entitled to the credits aforesaid, amounting in the aggregate to $7336.75.

In his supplemental answer the appellee alleged, in replication, that if he ever promised to become responsible for the value of the feed wire as charged by appellant, it ought not to recover on such promise, because it was to answer for the debt, default, or miscarriage of another, and was not in writing. If the allegations of appellant are true, the guaranty was made at the special request of the appellee, for his benefit, and upon his special promise to indemnify appellant against loss that might be sustained by reason thereof. No debt or obligation of appellant existed before the guaranty was made, and it having been made for appellee's benefit and upon his express promise to indemnify appellant against it, and the object of appellee's promise being to subserve his business purpose, the statute of frauds has no application, and can not be invoked as a defense by appellee. Muller v. Riviere, 59 Texas, 645; Limmon v. Box, 20 Texas, 332.

There were depositions and writings on file with the papers in the cause affecting the issues pertinent to this contract, which appellee was .allowed, over appellant's objections, to examine and testify as to their meaning, and state his conclusions as to what facts were established by such documents. This was error. It was for the jury, .under proper instructions of the court, to determine the meaning of the depositions and writings, and what facts, if any, were proven by them. A party to an action should not in any manner be substituted for the jury, and permitted to exercise its functions upon the trial of his case.

There was no issue between appellant and the San Antonio Street Railway Company as to the cost of the feed wire to be delivered in this case, and we fail to see how the statements in a letter written by the agent of appellant company to the president of the latter can be used as evidence against appellee. If the agreement between the appellant and the president of the street car company was made for appellant by Berg, the agreement, if proven as made, might be evidence for either party, but we do not think that the letter of October 19, 1891, from the agent of appellant to Mr. Weiss, president of the street railway company, is such evidence of the understanding as can be used against the appellee. As has been stated before, the appellant did not admit that it owed appellee anything on this transaction. Therefore the burden was on the appellee to establish the amount, if anything, he was entitled to recover. If there was a contract between them by which his compensation should be estimated and determined, the contract should have been proven, as well as such a compliance with and performance of its terms as entitled him to the amount claimed. If there was no contract governing them in the transaction, then he should have shown fully what services he performed, and the value of such services. When his proof was in on the subject, it was then, and not till then, that it was incumbent on the appellant to establish the matters pleaded in answer to this claim. But the court charged the jury that appellee's claim was admitted, and then cast the

burden upon the appellant to establish the matters pleaded in offset. This was error.

We will now recur to the Alamo Street Railway Company's contract, which was made and bears date July 17, 1890. Under it the appellee claims $7578.44 commissions. It appears from the uncontradicted evidence that this contract was not made by the appellee, and it seems that he was not aware of it until after its consummation. It appears from the evidence that before the contract was made he endeavored to effect a sale of appellant's products to the Alamo Street Car Company, or some of its promoters, and expended much time and money in his efforts, but apparently without accomplishing anything in that direction. He does not, as we understand his pleadings, sue for the value of such expenditures, but for a certain commission on the purchase money of the products sold. In order to maintain his action for the commissions claimed, it is clear that he must show a contract of such a nature as entitles him to them on a sale not made or effected by himself. It might be that the allegations in his original answer are sufficient to admit proof of such contract, for in it he avers that he was entitled to receive commissions or compensation for the sale of all such manufactured products of appellant, as might be made through him, appellant, its agents and employes within the State of Texas. But in his supplemental answer he seems to disavow such contract, and place his claim for services rendered between April and November 19, 1889, upon a quantum meruit. And he testified that from April down to November, 1890, he was acting as the agent of the appellant, without a written agreement, but with the understanding that he was to represent the company in the State (Texas) and get a certain percentage upon the profits of the business he might do; that during that period the percentage of profit was not stated, and he was working on an implied contract. So it seems that neither his allegation nor his proof will support his claim for $7578.44 commissions on a sale which was not made by him. If it should be conceded that his supplemental answer claiming a quantum meruit did not change the basis of his action, he is still left without proof to sustain his allegation that at the time the sale was effected he was entitled to a commission on all sales of appellant's products made in Texas, whether effected by appellant, its agent, or himself. But he testified again, that his commissions on this contract were earned by him under the provisions of the contract between him and appellant of November 19, 1890. This can not be, for there is nothing to show that contract was even contemplated by the parties earlier than October preceding its date. If it were possible that he should have earned his compensation under the terms of a contract made long subsequent to the time the goods were sold to the Alamo Street Car Company, the compensation under that contract could not be near, if anything, what he claims, for the testimony shows without contradiction that only $5004.57 was paid appellant for the products sold the Alamo company, and by the

terms of the contract of November the appellee was only entitled to recover commissions on the purchase money of the machinery sold when it was paid. The testimony of appellee, that the commissions were earned under the contract of the 19th of November, should not have been admitted, nor should any of the evidence complained of by appellant in its assignments affecting this transaction, there being no pleadings to support such testimony, and much of it for obvious reasons being inadmissible under any pleadings. The court should have withdrawn appellee's claim for commissions on this sale from the jury, there being neither pleadings nor evidence under which it could be sustained. It will be remarked here, that the other four contracts herein before considered with the Alamo street contract constituted all the claims of appellee against appellant for services rendered prior to the 1st of December, 1890. The first four, as well as every other claim which was in any way admitted, were submitted in the first paragraph of the court's general charge. All others were submitted as contested demands in the second. Yet the inference may be drawn from the third paragraph of the charge that there were other claims upon which the jury could find for appellee. Such an inference should have been excluded, for it is not warranted either by the pleadings or evidence.

All other demands of appellee arose under the contract of November 19, 1890, by which his compensation is governed and determined. By this contract it was provided, that appellee's compensation should be solely the prices secured over and above prices fixed in the attached schedule; that all contracts should be made in name of appellant, etc., and that upon the closing of the contract the proper commissions should be credited to appellee's account, but that the credit of such commissions at that time and prior to the receipt by the company of the cash from the purchase should be regarded as a matter of accommodation and convenience, rather than an obligation of the company to pay until cash settlement should be made, "the idea being that the financial responsibility of the purchaser can not always be determined by the Chicago office, and we [appellant] desire to have you [appellee] assume the risk in connection with the contract to the extent of your [appellee's] commission, in case of failure to make a cash settlement with purchaser." The purchase money on some of the contracts of sale made by appellee of appellant's products under this contract had not been paid when this cause was tried. That such was the fact there was no controversy. On claims not admitted arising under this contract the burden was upon appellee to show the payment of the purchase money for goods sold under it before he could recover, and the appellant's counsel asked the court to instruct the jury that by the terms of the contract the appellee could not collect his margin or difference due him upon contracts made by him between appellant and purchasers, any faster, proportionately, than the purchasers had paid the contract prices. This charge should have been given. But the

court instructed the jury not to consider whether the items involved were matured or not. This was error. Matters were pleaded by the appellee in avoidance of this provision of the contract, whereby he alleged that it had been waived or appellant estopped from claiming the benefit of it. These matters in avoidance should have been proved and submitted to the jury for their determination. It was not for the court to pass upon them, or to charge the jury, in effect, to disregard a plain provision of the contract. If anything further is necessary to demonstrate the error, it may be illustrated by an application of the third West End Street Car Company contract. Under this contract, the appellee claimed that he was entitled to $1062.50 commissions. The appellant admitted that he would be entitled to that sum when the purchase money was collected, but alleged that it was only partially collected, and that therefore the appellee was only entitled to such percentage of his gross commission as the portion of the purchase money collected bears to the entire purchase money. The court charged the jury that appellant admitted the claim of $1062.50, but claimed it was not due. Therefore, under the charge, whether due (matured) or not, the appellee was entitled to recover the whole amount. On the San Antonio Gas Company contract the appellee claimed $762.50 commissions. The court charged, without qualification, that $500 of this amount was admitted by appellant. The appellant pleaded and introduced evidence to prove that this was a special contract between it and the gas company for certain motor power generators and station equipments to be furnished and delivered by it to the company at a fixed price, and in accordance with terms agreed to by appellee; that the purchase price was to be paid by the gas company in mortgage bonds of the company, and that according to agreement appellant agreed to and did accept from the company its first mortgage bonds for the purchase price; that appellee agreed to accept his commission in said bonds. The appellant then admitted that appellee is entitled to one of said bonds, which is in the sum of $500. But appellant denied that he was entitled to any commission on the station equipments, for which he claims $262, because such equipments were included in the generators. Therefore it is clear that the court should not have charged the jury that $500 of the claim was admitted. He was only entitled to the admission as made. If the bond was withheld from him by appellant, he could on the admission only have recovered its value.

On the Houston Street Railway Company contract the appellee claimed $5162.50 commission. The appellant denied the entire demand, upon the ground that the appellee never had any connection with making the contract. The contract was for machinery manufactured by appellant to be used by the Houston Street Railway Company in operating its street railway in the city of Houston, Texas. The sale was made in November, 1891. The fact is undisputed that the sale was not effected by appellee, but he bases his claim to his com-

missions upon the ground that under his contract with appellant of November 19, 1890, he was entitled to a commission on the sales of all appellant's products to be used in the State of Texas, whether made by him or not. We think that it bears the construction contended for by the appellee, and that it reasonably appears from the dealings between the parties that appellant placed upon it the same construction, and there is no error in so much of the court's charge as gave it this construction. That the terms of the sale were agreed upon outside of the State of Texas would not, in our opinion, militate against appellee's right to his commissions.

The only modification of prices from those fixed at which appellee was to sell was of stationary motors, and as it was not claimed that appellee sold any of them, it was not necessary to construe that clause of the contract of November 19, by which appellant agreed, that if the prices from time to time ordered by it to be charged by appellee, should be such as to reduce his gross profit, calculated by a percentage on the prices exhibited in the schedule attached, below the profit to be made at the date of contract, appellant would reduce the schedule prices correspondingly, so that the gross profit to be made at any given time should be as large a percentage of these schedule prices as the margin of present selling prices to local companies is to the prices made to appellee at the date of the contract. Therefore it was error for the trial court to undertake, as it endeavored to do in the fourth section of its charge, to apply that provision of the contract to any sales made by the appellee. The fact that appellee, as he did in several instances, obtained the consent of appellant to sell at a lower price than fixed by the contract, would not bring the sales under this provision. Without it was otherwise specially agreed between appellant and appellee, the latter's compensation on such sales would be "solely the price secured over and above the prices fixed in the attached schedule," that is, the one attached to the contract.

The appellee's seventh cross-interrogatory to B. E. Sunny, appellant's manager, was as to an instrument purporting to be a letter written by W. J. Ballard to the witness from San Antonio, Texas, on November 16, 1892. The original, if it ever existed, would not have been admissible if it had been produced on the trial. The matters stated were simply conclusions and opinions of the writer about matters in which he was not shown authorized to act for appellant. Yet the statements were of such a character as to strongly prejudice a jury against the appellant; in fact, we can hardly conceive of anything more strongly calculated to have that effect. The interrogatory was objected to on the trial, the objection was overruled, and the interrogatory and exhibit attached in the form of a letter was read to the jury; thus giving the appellee advantage of it as though it was evidence, and such letter had actually been written. The court in its final charge informed the jury that it had been erroneously admitted, and instructed them not to regard it, but in doing so, it was charac-

terized as "the letter of November 16, 1892, from W. J. Ballard to B. E. Sunny." So strongly did a purported copy attached as an exhibit to an interrogatory impress the judge that such a letter had been written, that he forgets that it is simply an assumed copy, and informs the jury that it is a letter in his language used in withdrawing it from their consideration. The exhibit should have never been permitted to be read to the jury, and we believe that this error alone would require a reversal of the cause, for so prejudicial was the nature of the exhibit to appellant, that we do not believe that a jury could free their minds from its influence. A party should not, under the guise of an interrogatory, be allowed to get before the jury as evidence a copy of that which would be inadmissible if the original were produced. It may be that the proper practice would have been to urge the objection as one going to the manner and form of taking depositions, but we think that it was of such a character as could be interposed at any stage of the proceeding.

The statement made by Ballard to T. C. Frost while in San Antonio, to the effect that there was a large disputed claim for commissions, and that when they matured appellant would probably be owing appellee an amount in excess of the amount it had sued him for, should not have been admitted. It was simply a conjecture of the witness, and one that he was not shown to have the authority to express.

Such other errors assigned as are not touched upon in this opinion are such as will not likely arise on another trial.

The appellee's cross-assignment of error is not well taken. Abandoned pleadings are incompetent to prove a material fact. Medlin v. Wilkens, 1 Texas Civ. App., 465.

On account of the errors indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 20, 1895.

### ON MOTION FOR REHEARING.

NEILL, ASSOCIATE JUSTICE.—The language appearing on page 6 in our original opinion referred to in appellee's motion, wherein he urges that our holding as there expressed is inconsistent with the part of the opinion found on pages 8 and 9, is not correctly quoted. We said: "This last contract [referring to the one bearing date November 19, 1890], shows upon its face that the organization of the proposed Southwest Thompson-Houston Electric Company has been abandoned; if not by mutual consent of the parties to this action, that both parties recognized and acquiesced in its abandonment. As neither party in its or his pleadings charges the other with the failure of the organization of the company, nor claims damages on account of such failure, why the proposed corporation never came into existence is a matter of no moment." This statement was made for the

purpose of demonstrating that certain letters and negotiations relative to the organization of the company were irrelevant. And when considered in connection with the purpose for which the language is used, it can not be considered at all inconsistent with the expression referred to in the motion on the ninth and tenth pages of the opinion. Though the company was never organized, the terms of the contract which would have governed it and appellant in their transactions with one another if it had been, may have governed the parties to this action in their dealings up to the time the organization of the company was finally abandoned. As to whether or not they were governed by such terms was made an issue by the pleadings. There was evidence upon the issue, and we simply held that it was error in the court below not to submit it by a proper charge to the jury.

We do not think that other parts of the opinion complained of in the motion require further elucidation, nor that any reason is shown why a rehearing should be granted.

Therefore the motion is overruled.

*Overruled.*

Delivered April 17, 1895.