## J. M. WATTENBARGER V. S. N. HODGES.

Decided February 18, 1905.

**1.—Statute of Frauds—Default of Another—Independent Promise.**

Plaintiff contracted to sell certain lands to defendant's brother, and the brother put up $300 to be forfeited if he failed to take and pay for the lands by a stated date. He so failed to do, and defendant, being desirous for his brother to buy the land, and thereby become his neighbor, agreed with plaintiff that if the latter would further extend the time, and the brother did not then complete the purchase, he, defendant, would on his own account pay a forfeit of $500. Held, that this was not within the statute of frauds as a promise to answer for the debt or default of another, but was an original and independent promise, upon which defendant was liable.

**2.—Same—Consideration.**

The disadvantage to plaintiff in extending the time, and in declining, at the instance of defendant, another desirable offer for the land then pending, was a sufficient consideration for the promise, aside from the advantage to defendant of having his brother for a neighbor.

Appeal from the District Court of Sherman. Tried below before Hon. S. T. Fagan.

*Browning, Madden & Trulove,* for appellant.—The cause of action in this case is the defendant's check; the statute of frauds, set up by the demurrer as a defense, affects the consideration only, and not the contract. The demurrer should have been overruled. Crutchfield v. Donathan, 49 Texas, 696; Watson v. Baker, 71 Texas, 747; Hannay v. Moody, 71 S. W. Rep., 325, 326; 2 Pars. Con (6th ed.), p. 7; Anderson v. Tinsley, 28 S. W. Rep., 122; Branch v. McReynolds, 38 S. W. Rep., 625.

*Turner & Boyce,* for appellee.—The statute of frauds was not overcome by plaintiff's reply. The check had become null and void in law when the deal between defendant and George Wattenbarger was consummated. It would require some valid consideration to revive it. A verbal promise on the part of defendant to indemnify plaintiff against loss by reason of a failure on the part of R. G. Hodges to comply with his contract would be necessarily within the statute of frauds, and not enforceable. Zanderson v. Sullivan, 44 S. W. Rep., 484; Westmoreland v. Carson, 13 S. W. Rep., 559; Ganset v. Orr, 73 S. W. Rep., 477; Jones v. Carver, 59 Texas, 293; 7 Wait's Ac. & Def., p. 7; Brandt on Suretyship and Guaranty, secs. 59, 75.

2. The check was not sufficient as a memorandum. Moore v. Powell, 25 S. W. Rep., 472; Munk v. Weidener, 29 S. W. Rep., 408; Zanderson v. Sullivan, supra.

In order for the defendant's agreement to be valid and binding on him, it must have been substituted for that of R. G. Hodges with the plaintiff, and R. G. Hodges released. Hill v. Frost, 59 Texas, 25; Bason v. Hughart, 2 Texas, 476; Starr v. Taylor, 56 S. W. Rep., 543; Ridgell v. Reeves, 2 App. Con. Cas., 436; Cobb v. Ward, 19 S. W. Rep., 250; Brandt on Suretyship and Guaranty, sec. 76; Muller v. Reviere, 59 Texas, 640.

STEPHENS, ASSOCIATE JUSTICE.—Appellant declared on a bank check for $500, drawn in his favor by appellee. The declaration was met with a plea to the effect that the check had been superseded by one for a larger amount, which had been paid. In avoidance of this defense, appellant alleged in a supplemental petition a new but oral promise on the part of appellee to pay him the amount of the check, which, though it had been superseded as alleged by appellee, was still in the hands of appellant when the oral promise was made, and was by mutual consent revived. The court sustained a general demurrer to the supplemental petition and also a special exception pleading the statute of frauds against the oral promise, on the ground that it was a promise to answer for the debt, default or miscarriage of another. This ruling led to a judgment against appellant, from which this appeal is prosecuted.

According to the allegations of the supplemental petition, appellant and R. G. Hodges, a brother of appellee, made a written contract August 22, 1902, for the sale and transfer on November 1, 1902, to R. G. Hodges of three sections of school land in Sherman County belonging to appellant. The concluding article of this contract was as follows: "Fourth: Both parties hereto deposit as a forfeit the sum of $300, in the First National Bank of Denton, Texas, that is to say, each of us will deposit in said bank our personal check in favor of the other for $300, same to be there kept until the first day of November, 1902, and if either party shall on said date fail to comply with his part of this agreement, then he shall forfeit to the party not so failing and ready and willing to comply therewith, the said sum of $300 as liquidated damages for failing to comply with this agreement, and the said party not in default shall be entitled to said check and shall be entitled to recover of the party so in default the said sum of $300 as liquidated damages, and in full payment and settlement of all damages sustained by reason of his not having complied with this agreement."

Both parties complied with the requirement of the contract as to the deposit of checks, but R. G. Hodges failed to move to Sherman County and take the lands within the time specified, and appellant, having an opportunity to make an advantageous sale of said three sections and one other to one Honecker, about November 10, 1902, informed appellee, who had purchased adjoining lands and who had expressed a desire to have his brother for a neighbor, that he desired to accept the offer of Honecker, and felt unwilling to hold the land for R. G. Hodges any longer for the small sum of $300 covered by his check. Whereupon, as alleged in said supplemental petition, appellee "offered and proposed to plaintiff that if he, plaintiff, would extend the time on said contract with said R. G. Hodges until said R. G. could get there, he, defendant, would give him $500 on his, defendant's, own account as a guaranty that R. G. Hodges would carry out his said contract, and stated in substance that he, defendant, would then and there give plaintiff his, defendant's, individual check for the $500, which should and would be intended to liquidate the damages of plaintiff in case R. G. Hodges failed to make good his said contract. That plaintiff accepted said proposition, and it was agreed between plaintiff and defendant that plaintiff might accept and hold the check sued on (which had been and was then in his possession on account of the trade between defendant and

George Wattenbarger) and in case said R. G. Hodges, for any cause, failed to pay for and receive .the said three sections of land in said contract mentioned, then the plaintiff would be entitled to and should have the right to collect the amount called for in said check and hold the same in his own right as and in settlement of his damages on account of failing to carry out said contract with defendant. That plaintiff, by reason of said agreement and contract with defendant, accepted and held said check, as aforesaid, and declined to sell said lands to said Honecker, and thereby lost the said proposed trade." R. G. Hodges finally moved to Sherman County, but refused to take the lands, although appellee had repeatedly assured appellant that he would do so, and urged appellant to wait on him, it being further alleged, in effect, that R. G. Hodges had authorized appellee to act for him in the premises.

Treating the promise of appellee, to pay appellant five hundred dollars in case R. G. Hodges failed to consummate the sale agreed on between him and appellant, as a promise to pay that sum of money as liquidated damages—it being so treated in the supplemental petition demurred to— we are of opinion that it was not a promise to· answer for "the debt, default or miscarriage of another," within the meaning of the statute of frauds. (Rev. Stats., art. 2543.) To bring it within that statute the promise must have been to answer for the same debt for which R. G. Hodges was liable by reason of his failure to consummate the sale, the language of the statute indicating and the decisions construing it holding that the promise required to be in writing must be a collateral and not an original or independent one. The promise of R. G. Hodges, both as originally made by him and as extended by appellee for him, was, that if he did not take the land he would pay appellant three hundred dollars in full satisfaction of the damages. The promise of appellee was, that if appellant would extend the time and forego the sale to Honecker and if R. G. Hodges did not then take the land, he would pay on "his own account" five hundred dollars to cover appellant's damages. The latter promise created a liability for a different and greater sum than the former, and was not one to answer for the same debt or default as the former. The promise of appellee, so far from being conditioned on the failure of his brother to meet his obligation to pay three hundred dollars as liquidated damages, seems to have been either in addition to or in lieu of that obligation, and was not therefore collateral to it. True, this promise was conditioned on the failure of R. G. Hodges to take the land, and in a sense was a promise to answer for that default or miscarriage, but not more so than was the promise of R. G. Hodges himself to pay the damages agreed on between him and appellant. The nature and terms of the written contract between appellant and R. G. Hodges left appellant but one legal remedy for the failure of R. G. Hodges to become a purchaser of the three sections of school land held by appellant, and that was to collect the check for $300, "in full payment and settlement of all damages." A promise to answer for default in the payment of this check would have been within the statute, but the promise to pay a larger sum as liquidated damages in lieu of or in addition to said $300 was an independent promise. The failure of R. G. Hodges to take the land was but a condition of appellee's promise—one which gave appellant the right to maintain an action thereon—and was not "the default or

miscarriage" referred to in the statute of frauds. No surety was needed for such default or miscarriage, for the contract provided its own remedy for that. The disadvantage to appellant in extending the time and declining a desirable offer for the land at the instance of appellee was a sufficient consideration for the promise, to say nothing of the advantage to appellee of having his brother for a neighbor. Besides, the promise of appellee, as alleged, was expressly made "on his own account."

The case of Gansey v. Orr (Mo.), 73 S. W. Rep., 477, cited by appellee, holding that a verbal promise of indemnity, regardless of the nonliability of the person for whose "miscarriage" it is made, is within the statute of frauds, we are not inclined to follow. While that is announced as the rule of construction in Missouri, on the authority of Green v. Creswell, 10 Ad. & El., 453, as the leading case, the opinion concedes that in a majority of the States a different rule prevails. (For a valuable collection of authorities see 23 Cent. Dig., "Statute of Frauds," sections 32, 33, cited in foot note.)

In Tighe v. Morrison, 5 L. R. A., 617, the New York Court of Appeals, after citing numerous authorities to support a construction there given the statute of frauds, used this language: "There are cases holding the opposite doctrine, the most noted of which are Green v. Creswell, 10 Ad. & El., 453, and Kingsley v. Balcome, 4 Barb., 131. The former, which is responsible for much of the confusion existing upon the subject, can no longer be regarded as the law in the country where it was decided, as will appear from the later English cases," citing several.

The rule announced in Gansey v. Orr, supra, does not seem to have been sanctioned in any Texas case, but the contrary seems to be the rule here. (Brown v. Bank, 88 Texas, 265; Muller v. Riviere, 59 Texas, 640; Campbell v. Pucket, 1 Posey U. Cas., 465.)

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*