## BAIN v. LOVEJOY. (No. 249–3449.)

(Commission of Appeals of Texas, Section A. Nov. 30, 1921.)

**1. Frauds, statute of ⬅➡23(1)—Promise to indemnify against loss by stock purchaser not within statute.**

A promise by the president and principal stockholder of a corporation to indemnify a purchaser of the stock against the loss from such purchase is not a promise to answer for the debt of another required by the statute to be in writing, since there was no obligation by the corporation to protect the purchaser against loss to which the stockholder's promise could be collateral.

**2. Frauds, statute of ⬅➡33(1)—Parol assumption of debt for consideration is valid.**

A parol assumption of and promise to pay the debt of another for a valuable consideration is valid.

**3. Limitation of actions ⬅➡100(6)—Begins to run from discovery of loss from fraud in sale of stock.**

The limitation of two years on an action for fraud in the sale of corporate stock begins to run when the plaintiff discovered, or by the exercise of proper diligence ought to have discovered, that he had been defrauded in the purchase of the stock and had suffered loss thereby.

**4. Limitation of actions ⬅➡48(1)—Action for fraud in stock sale held to have accrued on maturity of indemnity note.**

Where the president of a corporation, who had induced plaintiff to purchase stock by means of false representations, thereafter gave to plaintiff notes signed by the corporation by himself, on which he represented he was personally liable and which matured at a fixed date in the future, the right of action for the fraudulent misrepresentations did not accrue until the maturity of the notes, if the plaintiff did not before that time learn that the president was not personally liable thereon, though he did learn that the representations concerning the stock were false, since, if the notes

had been in fact the personal obligations of the president, recovery could have been had only upon them.

**5. Fraud ⊜═59(1)—Measure of damages to purchaser of stock stated.**

Where the president of a corporation, who had fraudulently sold stock to plaintiff, was liable to plaintiff because of his false representation that he was personally bound by the notes of the corporation given to indemnify plaintiff, he was liable only for the amount plaintiff paid for the stock, with interest from date of payment, and could not be charged with conventional interest or attorney's fees.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by W. P. Bain against John Lovejoy. A judgment for defendant on a directed verdict was affirmed by the Court of Civil Appeals (215 S. W. 984), and plaintiff brings error. Reversed and remanded.

John T. Hill, of El Paso, for plaintiff in error.

Lea, McGrady, Thomason & Edwards, of El Paso, for defendant in error.

GALLAGHER, J. There is evidence in the record in this case tending to establish the facts hereinafter recited.

Plaintiff in error, W. P. Bain, was injured while in the employ of a railroad company and suffered the loss of both feet. He brought suit at El Paso against the railroad for damages. He was acquainted with Maj. Lovejoy, and he employed him to come from Houston to El Paso and assist in the trial of his case. Bain recovered a judgment against the railroad, but for some reason it was set aside, whereupon a compromise was effected, and he received about $16,000 in the settlement. After paying his lawyers he had about $10,000 left, which he deposited in bank.

Maj. Lovejoy was president and principal owner of the Pecos Valley Gas & Oil Company, an Arizona corporation operating at Artesia, N. M. Immediately after Bain received said money Maj. Lovejoy approached him with an offer to sell him $1,000 of his own stock in that corporation. He represented to him that it was a splendid proposition that would make them all rich, that it was in good financial condition, and that its stock was selling at par and was worth par. He also made specific representations concerning the company's leases, equipment, and production of oil, and said that it was a going concern and making money.

These representations proved false. Attempts to operate and develop the property were made during the spring and summer of 1913, but they were abandoned in the fall of that year, and the property subsequently went into the hands of a receiver. The stock was in fact without any value, and no one received anything therefor by way of dividends or otherwise. Bain reposed complete confidence in Lovejoy, who referred to the fact that Bain was crippled, promised to be personally responsible to him, and to protect him from loss if he purchased the stock. Bain relied on these representations and Lovejoy's promise of indemnity against loss, and in January, 1913, purchased $1,000 of the stock of said Lovejoy in said corporation.

Some time in March, 1913, still relying on the same, he purchased $4,000 of the stock from the corporation. He went to work for the corporation at Artesia in March, 1913, and continued to work for it until October, 1913. When he turned the $4,000 over to the company he did not know its financial condition, and thought it was in good fix, but in about a week or ten days after he went to work for it he discovered its financial condition, and during the term of his employment he also discovered that its equipment and the amount of oil produced by it were misrepresented.

The work at Artesia was under the general supervision of Maj. Lovejoy, and the employees were paid by checks drawn by him individually. On the 26th day of July, 1913, Maj. Lovejoy had a conversation at the field office of the company with Bain about his investment in the holdings of the company. Lovejoy produced two notes, and said to Bain:

"If the oil wells produce, as we think they will, you will be a rich man, and, if they do not you won't lose a cent, for I stand personally good for these two notes."

Bain replied that Lovejoy knew his condition, and that, if he lost this money, he would be down and out. Maj. Lovejoy again assured him that he need not be afraid, for he stood personally good for the notes and handed them to him. One of these notes was dated February 1, 1913, due on or before April 1, 1914, for the sum of $1,000, with interest at the rate of 8 per cent. per annum, and the other was dated March 29, 1913, due on or before one year after date, for the sum of $4,000, with interest at the rate of 8 per cent. per annum. Both notes provided for 10 per cent. collection fees. Both notes expressed the obligation assumed, by the words, "We promise to pay," and both were signed, "Pecos Valley Oil & Gas Co., by Jno. Lovejoy, President."

Bain believed these notes to be the obligation of Maj. Lovejoy, as well as the company, and did not discover that they were not until they became due and were not paid.

This suit was instituted against Maj. Lovejoy on December 20, 1915, seeking to recover $5,000, with interest and attorney's fees thereon, and praying for general and

special relief. The petition is lengthy and sets out the facts with considerable elaboration. Maj. Lovejoy died before a trial was had. Presley K. Ewing, independent executor of his will, was substituted as defendant. He pleaded general denial and the statute of limitation of two years.

The case was tried before a jury on February 21, 1919. The court instructed a verdict for the defendant, and the plaintiff in the cause appealed. The Court of Civil Appeals affirmed the judgment. 215 S. W. 984.

Plaintiff in error complains of the action of the trial court in giving a peremptory charge to the jury to find a verdict against him.

Defendant in error seeks to justify the peremptory charge so given on the theory that the promises of Maj. Lovejoy to indemnify plaintiff in error and protect him from loss in the purchase of this stock, being verbal, were void under the statute of frauds as promises to answer for the debt, default, or miscarriage of another and also on the theory that plaintiff in error's cause or causes of action were barred by the statute of limitation of two years.

[1] We construe the testimony above quoted to show a promise of indemnity against loss made to plaintiff in error by Maj. Lovejoy in consideration of special benefit to him, he having a direct pecuniary interest in the sale of the first $1,000 of stock as owner thereof, and in the sale of the remainder thereof as president and manager of, and principal stockholder in, said corporation.

It is stated in 20 Cyc. p. 178, that a parol promise of indemnity to a purchaser of stock in a corporation is not within the statute of frauds. We quote from the text of said authority as follows:

"An agreement by parol to procure a person to take plaintiff's place as stockholder in a corporation and to indemnify him from expense or damage in consequence of becoming a stockholder and of giving his note in payment for the stock is not within the statute, since there is no default of a third person, to which such agreement can be collateral."

The cases of Merchant v. O'Rourke, 111 Iowa, 351, 82 N. W. 759, and Green v. Brookins, 23 Mich. 48, 9 Am. Rep. 74, are cited in support of the text quoted.

The promise of Maj. Lovejoy to indemnify against loss on his own stock sold by him to plaintiff in error was clearly original. There was no duty or liability on the part of any one else to indemnify plaintiff in error to which such promise could be collateral.

Since there is no liability on the part of a corporation to indemnify a purchaser of its stock against loss, the promise of Maj. Lovejoy to so indemnify him from loss on the stock purchased from the corporation was also original, and not collateral.

The rule is cited in Brown on Statute of Frauds, p. 79, § 159, as follows:

"When the promise is to indemnify against the consequences of such an act or engagement on the part of the promisee as involves no duty or liability on the part of any third person also to indemnify him, the statute manifestly does not apply; for there is no liability of a third party, either express or implied, to which the defendant's promise to indemnify can be collateral."

[2] The validity of a parol assumption of and promise for a valuable consideration to pay the debt of another has been uniformly upheld by the Supreme Court, and is the settled law of this state. Muller v. Riviere, 59 Tex. 640, 46 Am. Rep. 291; Bank of Garvin v. Freeman, 107 Tex. 523, 181 S. W. 187; Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562.

We have found no case where the validity of a parol promise of indemnity has been decided by our Supreme Court, but there are numerous decisions of other courts of this state, all holding such promises without the provisions of our statute of frauds. Heidenheimer et al. v. Johnston, 1 White & W. Civ. Cas. Ct. App. § 646; Campbell v. Pucket, 1 Posey, Unrep. Cas. 465; Thompson-Houston Electric Co. v. Berg, 10 Tex. Civ. App. 200, 30 S. W. 455, 461; Hall v. Taylor (Civ. App.) 95 S. W. 755, 756; McKnight v. Milford Gin Co. (Civ. App.) 99 S. W. 198, 199; Neely v. Dublin Fruit Co. (Civ. App.) 199 S. W. 827; Anderson v. First Nat. Bank (Civ. App.) 191 S. W. 836, 841; Clevenger v. Commercial Guaranty State Bank (Civ. App.) 183 S. W. 65, 66, 67; Gonzales v. Garcia (Civ. App.) 179 S. W. 932; Spencer v. Nalle (Civ. App.) 143 S. W. 991, 992; Wattenbarger v. Hodges, 38 Tex. Civ. App. 329, 85 S. W. 1013; Ferrell v. Millican (Civ. App.) 156 S. W. 230, 232.

We think the promises of indemnity made by Lovejoy to plaintiff in error were valid and actionable.

The first stock was purchased in January, 1913, and the remainder in March, 1913. The testimony of plaintiff in error is explicit that he believed the representations made to him, and thought the company was in good fix when he parted with his money. He testified, however, that he discovered the financial condition of the company shortly after he went to work for them, and that during his term of employment he discovered that its equipment and amount of oil being produced by it had been misrepresented to him.

Maj. Lovejoy on the 26th day of July of that year still expressed confidence in the oil wells and assured plaintiff in error that he would be a rich man in event they produced as he expected. He apparently demonstrated his confidence in the truth of this assurance by further assuring plaintiff in error that he need never fear loss on account of his investment, and by delivering the notes

above described, asserting that he (Lovejoy) was bound thereby. These notes matured on March 29 and April 1, 1914, respectively, and apparently fixed that as the date upon which it should be determined whether plaintiff in error had suffered loss on this investment. Suit was filed on December 20, 1915, less than two years from the maturity of these notes.

[3] While limitation began to run when plaintiff in error discovered, or by the exercise of proper diligence ought to have discovered, that he had been defrauded in the purchase of this stock and had suffered loss thereby, the apparent purpose in giving the notes was to satisfy plaintiff in error and to postpone action by him until their maturity. If they had been, in fact, the obligations of Maj. Lovejoy, as well as the company, as plaintiff in error understood them to be, he would have been by the acceptance of them precluded from bringing suit either for damages for fraud or for indemnity from loss until the notes matured and then his action would have been upon the notes if payment were refused. The fraudulent representations and promises of indemnity from loss would have been material only for the purpose of showing consideration for the execution and delivery of the notes. The running of the statute of limitation would in such cases have been stopped, and it would have begun to run anew, and the period of limitation would have commenced only at the maturity of the notes and default in their payment.

Should a different rule of limitation be applied in this case because plaintiff in error was deceived by the fraud practiced upon him in the execution and delivery of such notes? We think not.

[4] If plaintiff in error believed from the wording of the notes in question, the manner in which they were signed, and the representations made at the time they were delivered that Lovejoy thereby promised in writing to repay his money in event the wells did not produce as he claimed to expect or in event plaintiff in error sustained loss on his investment, and thereby fixed the maturity of the notes as the time when the question of loss or damage should be determined and payment should be made, and if a person of ordinary prudence would have so believed under all the circumstances, and if he did not discover, and could not by the exercise of proper diligence have discovered, the fraud so perpetrated upon him until the maturity of said notes, or before December 20. 1913, his cause or causes of action were not barred at the institution of this suit. These issues were questions of fact for determination of the jury under proper instructions.

[5] Since the notes as signed and deliver-ed to plaintiff in error were not in fact, the notes of Lovejoy, he was not bound by their terms nor liable for conventional interest nor attorney's fees.

If plaintiff should recover, the measure of his damages will be the amount paid for his stock with legal interest from date of payment.

The court erred in giving a peremptory charge, for which error we recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and the cause remanded to the district court for trial in accordance with this opinion.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in. its opinion.