HENRY CRESSWELL, APPELLANT, v. DAVID McCAIG AND OTHERS, APPELLEES.

1. **Trust:** LAND HELD IN TRUST BY CHILD FOR PARENT. In 1865 one M., at his father's request, came to this state and purchased 407 acres of land, for the sum of $2,400, paying thereon $1,000 of his father's money, but by consent taking the deed in his own name, and executing a mortgage on the land for the unpaid purchase money. Soon afterwards the father died, and the widow and her family removed on to the land in controversy, and have resided there ever since; but the legal title remained in M. until 1875, when he made deeds to those entitled to the same. In 1874 M. became surety for the payment of a large sum of money, upon which judgment was recovered in 1877, and an execution being returned unsatisfied, an action

was instituted to subject the land in question to the payment of the judgment, *Held,* That M. held the land in trust and not as owner.

2. **Statute of Frauds.** The statute of frauds does not render a contract void, but voidable at the option of either party. But it does not require a party to ignore considerations of moral obligation, equity, and good faith by pleading the same; and a creditor cannot do so.

3. **Practice:** SERVICE OF PROCESS BY BAILIFF. A bailiff, unless specially appointed for that purpose, has no authority, as *bailiff*, to serve process issued out of the district court.

APPEAL from the district court for Cass county. Tried below before POUND, J.

*A. C. Ricketts* and *J. R. Webster,* for appellants.

The contract, being by parol, falls within the statute of frauds. A payment by *cestui que trust* of a part of the purchase money does not relieve against the express provision of the statutes. G. S., chap. 25, § 3. *Bank v. McConiga,* 8 Neb., 245. Sugdon on Vendors, sec. 911. Brown on Stat. Frauds, sec. 93 (3d Ed.) 1 Perry on Trusts, sec. 135. *Holmes v. Holmes,* 44 Ill., 168. *Green v. Drummond,* 31 Md., 71. *Barnet v. Dougherty,* 8 Casey, 371. *Ring v. McClain,* 10 N. Y., 268. *Stutevant v. Stutevant,* 20 N. Y., 39. This is not a resulting trust. 1 Perry on Trusts, secs. 126, 133, 132, 137. *Hoehne v. Breitkeitz,* 5 Neb., 110. *Boyd v. McLean,* 1 Johns. Ch., 582. *Bottsford v. Burr,* 2 Johns. Ch., 409. *Malin v. Malin,* 1 Wend., 684. *Fort v. Calvin,* 3 Johns., 222. *Wallace v. Duffield,* 2 S. and R., 527. If the land was held by David McCaig in trust as a part of his father's estate, it should have been included in the inventory thereof. *Andrews v. Doolittle,* 11 Conn., 282. *Andrews v. Tucker,* 7 Pick., 250. *Bond v. Stevenson,* 58 Me., 499. *Matter of Butler,* 38 N. Y., 397. *Carrol v. Commett,* 2 J. J. Marsh, 195.

*Morrill v. Foster*, 32 N. H., 379. *Tucker v. Ellis*, 24 Miss., 173. *Peterson v. Bank*, 32 N. Y., 21. *Roy v. McPherson*, 11 Neb., 197.

*Sam. M. Chapman* and *T. M. Marquett*, for appellees.

In this case the trust estate established by the sworn bill and the testimony of both the trustee and *cestui que trust*, does not fall within the statute of frauds, as claimed by counsel for plaintiff in error. Here the trust is a resulting one; the property was *wholly purchased* by and with the funds of John McCaig, Sr., under his supervision and direction, and *as soon* as purchased was taken possession of and occupied and improved by the widow and heirs of the said John McCaig, Sr., who continued in the quiet, peaceable, and notorious possession of the same from that date until the year 1875, when the heirs having attained their majority, a division of the estate was made, strictly within and in conformity with the trust reposed in David McCaig, the trustee. This trust could have been enforced at any time by the heirs of John McCaig, Sr., as against David, the trustee. In the case at bar the trustee, recognizing the trust, carried it out. The testimony establishes a sufficient consideration, and brings this case fully within the weight of authority. *Boyd v. McLean*, 1 Johns. Ch., 582. *Botsford v. Burr*, 2 Johns. Ch., 406. Sug. on Vendors, 414-419. *Hampson v. Fall*, 64 Ind., 382. *Crook v. U. S.*, 40 Mich., 599. 30 Gratt., 744. *Winkfield v. Brinkham*, 21 Kas., 682. *Brewer v. Mitchell*, 27 N. J. Eq., 54. *Stark v. Skarrs*, 6 Wall., 419. *Moody v. Arthur*, 16 Kan., 428.

MAXWELL, CH. J.

This is an action in the nature of a creditor's bill to subject 407 acres of land, formerly held in the name of

David McCaig to the satisfaction of a judgment for the sum of $6,000 and interest, in favor of the plaintiff and against the defendants, David McCaig and John Mc-Caig.

The defense relied upon is: First, that the land in question never in fact belonged to David McCaig, but was a part of the estate of his father, John McCaig, Sr., and was held by David in trust for the heirs of said estate, who from the time of the purchase, in 1866, have resided continuously thereon, and have been in the quiet and peaceable possession of the same. Second, that the pretended judgment is a nullity, for want of jurisdiction in the court rendering the same. On the trial of the cause the court found the issues in favor of the defendants, and dismissed the action. The plaintiff appeals to this court.

It appears from the testimony that in the year 1865 the McCaigs were residents of Ogle county, Illinois, and that John McCaig, Sr., and Mary Mc-Caig, defendant herein, were husband and wife and the parents of David, Daniel, William, Joseph, and Sarah McCaig; that David was the eldest son, and was largely entrusted by his father with the management of his affairs; that in September or October of that year, David, at his father's request, came to this state to select land for a home for his father, and purchased the land in question for the sum of $2,400, paying at the time of the purchase $1,000 of his father's money, but taking the deed for the premises in his own name, and executing a mortgage upon said real estate to secure the unpaid purchase money; that the reason why the deed was taken in his name instead of his father's was to enable him to execute a mortgage upon the lands in question without the delay incident to the transmission of an instrument to Illinois for execution, there being no communication

17

by railroad at that time; that this was the arrange-ment between him and his father, a deed for the lands to be made to his father as soon as he removed to this state; that in the spring of 1866, John McCaig, Sr., while preparing to remove on to the lands in ques-tion, died intestate; that a few days thereafter the widow and family came to this state, and have resided on this land from that time until the present. None of this land was included in the inventory of the estate of John McCaig, Sr. On the 28th of May, 1875, Da-vid McCaig conveyed 167 acres of this land to his mother, 80 acres to his sister, Sarah McCaig, and 80 acres each to his brothers, Daniel and Joseph Mc-Caig. It also appears that when William and John became of age, they were paid their share in the estate, and took homesteads and settled upon them, and that David also had received his share. In September, 1874, David McCaig, as surety, signed two notes, each for the sum of $2,500, due in thirteen months from date, in favor of the plaintiff, upon which judgment was after-wards recovered, and upon an execution being issued thereon and returned unsatisfied, this action was brought.

It also appears that the debt was contracted by the state grange prior to that time, and that no part of it was contracted on the credit of David McCaig, and that he was induced to sign the notes in question upon the representations of Otis (a partner of the plaintiff), that "you will not lose a dollar by signing this; there is enough stuff here, if taken care of and not levied upon, to make all our indebtedness. You will not lose a dollar by signing the note." And he denies the testimony of Otis, that he represented to him that he owned any portion of the land in dispute. Upon this testimony we are asked to subject this real estate to the payment of the judgment. The testimony of the defend-

ants is clear and consistent, and carries with it an air of probability, which convinces us of its truthfulness. This was a family arrangement, and when not made for the purpose of hindering, delaying, and defrauding creditors, and is satisfactory to those entering into it, their motives will not be enquired into. The primary question is, to whom did the real estate in question actually belong at the time the deeds in question were made? Suppose that in the year 1865 David McCaig had purchased this land with his own money and taken a deed therefor in his own name, and thereafter should have sold the same by a parol contract to his mother, brothers, and sister, payments to be made from time to time till 1875, and upon the completion of the same he should convey said premises by deed, could subsequent creditors assail such sale and have the deed set aside because the contract was void? And if they could not, can they assail a trust which, whatever its character, was not designed to hinder, delay, or defraud creditors, and the trust having been fully executed? This is not an action to enforce a trust; if so, the authorities cited by the appellant would be applicable. The object is to have it declared void, and that the parties receiving deeds are not beneficiaries under the same. The statute of frauds does not make parol contracts void, but voidable at the option of either party by withholding a right of action thereon, but does not require either party to ignore considerations of moral obligation, equity, and good faith, by pleading the same, and certainly a creditor cannot do so. *Cahill v. Bigelow*, 18 Pick., 369. *Lefferson v. Dallas*, 20 Ohio St., 74. *Muis v. Morse*, 15 Ohio, 568. That this property belonged to the estate of John McCaig, Sr., is clearly established by the testimony, and the widow and children were as much entitled to the same as though they had purchased and paid for it. The mode of dividing the

property is not before the court, and whether just or unjust was satisfactory to them, and will not be enquired into in this action. The omission to inventory this property as a part of the estate is of no consequence. The plaintiff was not a creditor of the estate, and has no cause of complaint on that ground. It is very clear that David McCaig, at the time he signed the notes in question, was not the owner of this land, but had the mere naked legal title to the same. The judgment of the district court must therefore be affirmed.

As to the jurisdiction of the court, there was no appearance in the action, and the court, if it acquired jurisdiction, did so by the service of a summons. The return on the summons is as follows: "I received this writ at 9 o'clock A.M., on the 5th day of June, A.D. 1877, and as commanded thereby I summoned the within named David McCaig, John McCaig, (William McCaig not found in Cass county, Neb.) on the 6th day of June, A.D. 1877, in Cass county, Neb., by leaving at the residence of David McCaig and John McCaig a true and certified copy of this summons, with all the endorsements thereon.

"M. B. CUTLER, Sheriff of Cass Co., Neb.
"By WM. GILMORE, Bailiff."

A bailiff, unless specially appointed for the purpose, has no authority to serve process issued out of the district court, and if it clearly appeared that the service was made by him as *bailiff*, it would be null and void. There is testimony, however, tending to prove that he was deputy sheriff at or about the time designated, and the court below found the service to be sufficient, and we are unable to say that this finding is incorrect, although the evidence may not fully satisfy our minds upon that point. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.