L. MERCHANT, Assignee, Appellant v. M. O'ROURKE.

**Statute of Frauds:** A MERE RULE OF EVIDENCE. The statute of frauds does not prohibit an oral contract, nor make such agreement illegal because certain formalities are not complied with, but

1   relates only to the method by which proof may be made in an
    attempt to enforce it.

AGREEMENT NOT WITHIN.  An agreement is held not to be within the
4   statute of frauds, as being a promise to answer for the debt,
    default, or miscarriage of another.

**Contracts:** MUTUALITY AND CONSIDERATION.  Where one is induced
    to purchase stock of a corporation by reason of an oral agree-
    ment of another to take the stock from him whenever he
2   should desire, and to pay him therefor what the same had cost,
    such agreement is not invalid for want of, mutuality and con-
    sideration.

CONSIDERATION.  Where one is induced to purchase stock of a cor-
    poration by reason of an oral agreement of another to take
    such stock from him whenever he should desire, and to pay
    him therefor what the same had cost, and, afterwards, on re-
    quest of the purchaser that the stock be taken off his hands,
3   such other person orally agrees that if the purchaser will re-
    lease him from his first agreement, and permit him to vote the
    stock by proxy, he will save the purchaser harmless from any
    liability on account of such investment, the release from the
    first agreement, though it be within the statute of frauds, and
    the right to vote the stock, are a sufficient consideration to sup-
    port the second.

*Appeal from Kossuth District Court.*—HON. LOT THOMAS,
Judge.

SATURDAY, MAY 12, 1900.

PLAINTIFF is an assignee for the benefit of creditors
under a deed of general assignment executed by one L.
Carmichael, and his cause of action grows out of the follow-
ing facts:  The Tama Furniture Company, whose business
is indicated by its name, was organized with a capital of
$10,000, divided into shares of $100 each.  Carmichael was
a stockholder, and defendant, also,—the latter being the
owner of 10 shares.  In several respects the requirements of
the statute were not complied with, in effecting the incor-
poration of the company.  The company became indebted
for a large amount, which it was unable to pay.  Some of
these debts were put in judgment against Carmichael, and

claims for all were filed with and paid by plaintiff, as his assignee. This action is brought to recover from defendant his proportionate share of the amounts so paid. The answer, so far as material here, is to the effect that Carmichael induced defendant to purchase the stock in .question by orally agreeing to take the same off defendant's hands at any time he so desired. It is alleged that, some time after this, defendant desired Carmichael to take the stock from him as agreed, and presented it for that purpose, and, to induce defendant to retain the stock, Carmichael then agreed orally that if defendant would release him from his agreement to take the stock, and would retain the shares himself, and permit Carmichael to vote the same by proxy, he (Carmichael) would save defendant harmless from any liability growing out of, or in any way connected with, the ownership of said shares. Evidence was received tending to sustain this answer, but on motion of plaintiff it was stricken out, and a verdict directed for plaintiff. On this verdict a judgment was duly entered. Thereafter, on defendant's motion, the judgment and verdict were set aside and a new trial ordered. From this order plaintiff appeals. —*Affirmed.*

*Struble & Stiger* and *Clark & Cohenour* for appellant.

*Carr & Parker* and *W. L. Joslyn* for appellee.

WATERMAN, J.—The parties unite in presenting for determination but a single issue, and that is whether the answer set up a legal defense. It seems to be conceded that, if it does, there was no error in granting the new trial. While we interfere very reluctantly with an order of this kind made by the trial court, yet we have no hesitation in passing upon the correctness of the ruling where the exact ground on which it is based is shown. *Turley v. Griffin,* 106

Iowa, 161. There are two contracts set up in the answer, and we shall take them up in their order.

I. Was the agreement valid by which Carmichael undertook to take the shares from defendant whenever the latter desired, and pay him therefor what the same had cost? On the part of appellant it is insisted that the invalidity of this contract is settled by the decision of this court in *Kauffman v. Harstock,* 31 Iowa, 472. In that case plaintiff had subscribed for certain shares of stock upon defendant's promise to buy them for the price paid, on certain conditions. The action was brought to enforce this agreement, it being alleged that the conditions were all performed. It was conceded that parol proof of the agreement was not admissible unless it was found to be a present sale of the stock, and this court held that it was not such a sale, and therefore could not be established by parol. This is all that is decided in the cited case. We do not regard the question of the statute of frauds as material in considering this first contract. If it was a lawful agreement, it is of no concern how it might be proved, for there is no attempt made here to enforce it. It is set up only as a basis for the second agreement, which is relied upon as a defense. The statute of frauds does not prohibit an oral contract, nor make such agreement illegal because certain formalities are not complied with. It relates only to the method by which proof may be made. *Townsend v. Hargraves,* 118 Mass. 334. We shall have more say on this subject further on. At present we devote our attention to the question of the validity of this first agreement, which seems to be denied for want of mutuality, and because it was without consideration. Option contracts are of frequent occurrence in the business world. Benjamin Sales, section 39. Had defendant offered to sell his stock to plaintiff at a certain price, giving him a definite time within which to accept, an acceptance within the time would have constituted a binding contract. Benjamin Sales,

*supra; Pratt v. Prouty,* 104 Iowa, 419. If such an option given the purchaser is valid, we can see no reason why a seller's option would not be likewise legal. The acceptance of the offer to sell in the one case, and of the offer to purchase in the other, makes the contract mutual. As to the matter of consideration, it is elementary that a detriment to the promisee is sufficient, and this is found here in the purchase of this stock by defendant, against his desire, because of Carmichael's promise. The first contract was clearly legal.

II. The second agreement, which is set up as a defense, was to the effect that defendant released Carmichael from his obligation to purchase said stock, and gave him the right to vote it, and the latter agreed to pay any liability that might be incurred on account of such investment. Let us suppose the first agreement was within the statute of frauds; it still might have been established by Carmichael's testimony. Code, section 4268. If Carmichael's oral admission could thus establish liability against him, we do not see why a recognition by him was not sufficient to give to this first contract vitality enough to make a release from its obligation operative as a consideration for the new agreement.

III. It is contended that the second contract was a promise to answer for the debt, default, or miscarriage of another, and therefore within the statute of frauds. Generally speaking, to bring a promise of this nature within the statute, it must be made to the person entitled to enforce the liability assumed by the promisor. A promise to the debtor to pay his debt, and thereby relieve him from the payment of it himself, is not within the statute. 1 Beach Contracts, section 507 *et seq.* It is apparent that those entitled to enforce the liability assumed by Carmichael were the creditors of the corporation, and no promise was made to them. In *Beaman's Adm'rs v. Russell,* 20 Vt. 205, the rule is thus stated: "If a promise of in-

demnity be not collateral to the liability of some other person to the same party to whom the promise is made, it is not within the statute." That this is the general rule, see *Tighe v. Morrison,* 116 N. Y. 263 (22 N. E. Rep. 164); *Chapin v. Merrill,* 4 Wend. 657; *Alger v. Scoville,* 1 Gray, 391; *Goetz v. Foos,* 14 Minn. 265 (Gil. 196); *Nelson v. Bank,* 48 Ill. 36. We are not without authority on this point in our own state. In *Bartlett v. Insurance Co.,* 77 Iowa, 155, there was a contract on defendant's part with another company, in which plaintiff was insured, to reinsure its risks. It was claimed that this contract was within the statute, and could only be established by written evidence. In passing on the point this court said: "An agreement to reinsure is not an undertaking to answer for the debt or default of the first insurer, but is an original undertaking, entered into with him, to indemnify the owner of the property in case a loss occurs. It is in no sense a contract of guaranty or suretyship, but under it, as between the immediate parties, the reinsurer assumes the risk absolutely. He takes the place of the first insurer, assuming his liabilities, and is bound in any event to him or to the owner of the property, and the statute of frauds has no application to a contract of that nature." In the case at bar the contract was an original undertaking of Carmichael, made upon a consideration which moved directly to him. It was collateral to no promise of defendant, and, for the reason heretofore given, was not within the statute. That there was a sufficient consideration for this second contract seems clear, without argument. Carmichael obtained the right to vote this stock, and secured a release from the obligation of his first agreement. The district court did not err in granting a new trial.—AFFIRMED.