ELLEN B. CURRIER, Appellant, v. RACHEL CLARK ET AL., Appellees.

**Mortgages:** EXECUTION: ADOPTION OF SIGNATURE: EVIDENCE. It is not essential to the validity of a mortgage that the mortgagors sign the instrument in their own handwriting, they may adopt the signatures made for them by another; and where there has been such adoption and acknowledgment the instrument is valid. Evidence held sufficient to show authority in another to sign the mortgage in suit for the grantors.

**Same:** ACKNOWLEDGMENT: FORCE AND EFFECT OF. The certificate of acknowledgment of an instrument in due form is not to be lightly overcome. Evidence held insufficient to overcome the presumption of due execution of the mortgage in suit, arising from the certificate of acknowledgment.

**Evidence:** TRANSACTIONS WITH A DECEDENT. A party to a claim against a deceased person's estate is not precluded by Code, section 4604, from calling as a witness the agent of the deceased who transacted the business involved in the suit.

**Same:** INTRODUCTION OF WRITTEN INSTRUMENT: PROOF OF EXECUTION. Where a copy of an instrument upon which an action is based, purporting to. have been regularly signed and acknowledged, is attached to a pleading as an exhibit, and the genuineness of the purported signatures is not put in issue by the answer, the plaintiff need not make any *prima facie* proof of due execution as a basis for introducing the same in evidence.

**Mortgages:** EXECUTION BY AGENT: EXTENSION OF PAYMENT. A contract for extension of time for payment of a note secured by a real estate mortgage is not a contract affecting real estate. And where the act of an agent in signing the names of the mortgagors to the instrument was done in their presence it must be regarded as an act of the parties themselves, and the fact that the agent's authority rested in parol was immaterial.

*Appeal from Appanoose District Court.*—HON. FRANK W. EICHELBERGER, Judge.

WEDNESDAY, FEBRUARY 9, 1910.

THIS is an action to foreclose a real estate mortgage against the administrator of the mortgagor, and against Rachel Clark, his widow, and others. There was a decree for the defendants, on the ground that the action was barred by the statute of limitations.—*Reversed.*

*Frank S. Payne,* for appellant.

*Read & Read,* for appellee Rachel Clark.

EVANS, J.—The mortgage in question purports to have been 'executed August 21, 1885, and purports to be signed by John Clark and Rachel Clark. It was given to secure a note of even date for $1,000, due in five years. The petition alleged that on August 20, 1890, the time of payment was extended for another period of five years by a written contract of extension, which was set forth as an exhibit therein. Successive extension contracts were alleged in the petition and set forth as exhibits, the last being dated

August 21, 1899, which extended the time of payment to August 21, 1901. The foreclosure suit was begun July 15, 1907. John Clark being dead, his administrator was made a party defendant, and was served with notice, but made no appearance to the action. Certain defendant lien-holders answered separately. The widow, Rachel Clark, and some of the heirs, joined in an answer separate from that of the other defendants. All of the answers contained a general denial. Some of them denied the genuineness of the signature of John Clark to the note, and of John and Rachel Clark to the note and mortgage. Some of them also set up the statute of limitations. The plaintiff was a non-resident, and had no personal knowledge of the transactions attending the making of the note and mortgage, or of the extension contracts by the makers. · On the trial her counsel called W. G. Clark, a son of the deceased, as a witness in her behalf.. Objection was urged to his competency as a witness, on grounds hereinafter indicated. Disregarding this objection for the moment, the facts as disclosed by his testimony are quite brief. He was a member of the firm of Dewey & Clark, and was engaged in the real estate and law business. At the time of the execution of the note and mortgage in suit he signed the name of his father to the note, and the names of his father and mother to the mortgage, in their presence, and under their direction, in his office. The mortgage was duly recorded within a few days after its execution. W. G. Clark also signed the extension contracts on behalf of John Clark. · None of the latter signing was done in the presence of John Clark, but was done in pursuance of previous consultation with him. Interest was paid annually upon the mortgage up to September, 1906. The date of the death of John Clark does not appear upon the record. The acknowledgment was taken before H. H. Dewey, a notary public, and his certificate appears to the mortgage in ordinary form. In a deposition taken in another state such notary identified the certificate

as being in his handwriting and over his signature. He stated, however, that he could not remember the circumstances of the transaction, but that he never took an acknowledgment unless the acknowledging persons were present.

Rachel Clark testified that she never signed the mortgage, nor authorized any one to sign it for her. This testimony, however, was very materially modified in her cross-examination. At the time of the trial she was eighty years of age. Because of the dispute of the parties in their respective abstracts concerning her testimony, we have read the same from the transcript. From her cross-examination it appeared that she could not write her name, and that her son, W. G. Clark, always signed her name for her to all papers which needed her signature. It appeared therefrom, also, that W. G. Clark did the same thing for his father, although the father could write his name. The following quotations from her cross-examination, as it appears in appellant's abstract, are fully justified by the transcript:

1. MORTGAGES: execution: adoption of signature: evidence.

When I signed the $1,000 mortgage [a previous mortgage], I was on the farm, but I don't remember whether I went to town to sign it or not. I can't say I come to town to sign it because W. G. always signed mine, and I never went to town. He signed my husband's name. He had a power of attorney. We relied on him to look after our business. When we gave notes or mortgages, he always signed our names. It was all right for W. G. to sign. He looked after our business. He had a power of attorney. When he did anything about our business, he had authority to do it. I put dependence in him to do all our business. W. G. had the right to do anything he saw fit. He signed the names. I never signed any mortgage. . . . I know my husband depended on W. G. to look after our business. . . . I know he did all our signing. Everything he did was all right. I depended on him. He was a good boy all his life, and I did not think he would do anything that

wasn't right. . . . We leased the coal under the land. I never signed the coal lease myself, and never knew anything about signing it. W. G. looked after the business for us, and if W. G. Clark signed it for me, he had the privilege of signing it. It was all right for W. G. to sign it. I didn't do any of the business, but my husband and Will tended to the business that was done about the farm.

This evidence was sufficient to prove the authority of W. G. Clark to do the signing in the case under consideration.

So far as the mortgage was concerned, the certificate of acknowledgment was sufficient proof of its due execution by the acknowledging parties. It was not essential to its validity that their names should have been signed in their own handwriting. If they adopted the signatures, by whomsoever made, and acknowledged the instrument, it was a valid instrument. The certificate of the notary in such a case will not be lightly overcome. *Gribben v. Clement,* 141 Iowa, 444; *Mixer v. Bennett,* 70 Iowa, 329; *Herrick v. Musgrove,* 67 Iowa, 63; *Bailey v. Landingham,* 53 Iowa, 722. Mrs. Clark did not in terms deny that she made the acknowledgment in question before the notary. She did testify that she never had heard of Mrs. Currier until many years later, and such statement might be deemed an inferential denial of the acknowledgment. That she might have acknowledged the mortgage, however, without learning the name of the mortgagee would be neither incredible nor improbable. We do not think that the formal denial made by Mrs. Clark in her direct testimony, and which is necessarily based upon the present state of her recollection, can be deemed sufficient to overcome the strong presumption arising from an acknowledgment of the mortgage. If the mortgage is to be deemed as sufficiently proved, such proof is necessarily sufficient to prove the execution of the note also, because the mortgage

*2. SAME: acknowledgment: force and effect of.*

describes the note. It is to be noted, also, that the adminis-
trator made no defense against the note.

Turning now to a consideration of the testimony of
W. G. Clark, the objection urged thereto is set forth as
follows in appellee's argument: "(4) This evidence of W.

3. EVIDENCE:
transactions
with a deced-
ent.

G. Clark is incompetent under Code, section
4604. The witness is a party to the suit.
The suit is against the heirs and administra-
tor of John Clark. The evidence relates to a personal trans-
action between the witness and John Clark, deceased.
Whatever rights plaintiff has were created and existed by
virtue of the transaction between the witness and the de-
ceased. W. G. Clark, therefore, was a person 'through whom
the plaintiff derived an interest,' and is incompetent, and
his evidence should be excluded, as it was by the court
below. Code, section 4604. (5) The incompetency of W.
G. Clark as a witness does (not?) rest upon a question of
interest in (as?) counsel for plaintiff seem to suppose, but
upon the ground that plaintiff derived her rights and inter-
est through him." The objection that Clark was a party is
not tenable. He had been made a party to the case, but
the plaintiff dismissed as to him before the case came to
trial. Appellee's principal contention at this point is that
he was the person through whom the plaintiff acquired her
rights, because he acted as agent in the transaction out of
which her mortgage arose. The simple question here pre-
sented is whether a party to a claim against the deceased is
precluded from calling as a witness the agent of the de-
ceased who transacted the business involved in the suit.
We know of no cases so holding. Appellees cite a number
of authorities, none of which support their contention.
They lay particular stress upon *McClanahan v. McClana-*
*han,* 129 Iowa, 411. Applying the language of that case to
its facts, it furnishes appellees no support at this point.
The witness in that case was not an agent. He was, so to
speak, a part of the "chain of title" of the cause of action.

Somewhat in point is *Toms v. Beebe,* 90 Iowa, 612;
*O'Neill v. Wilcox,* 115 Iowa, 15; 12 Encyclopedia of Evidence, 792, and these holdings are adverse to the position
of appellee. See, also, *Wormley v. Hamburg,* 46 Iowa,
144; *Savery v. Cypher,* 39 Iowa, 675. We think, therefore, that the testimony of W. G. Clark was not vulnerable
to the objection made against it at this point.

II. We come to the question of the validity of the
extension contracts. It should be noted first, that the plaintiff pleaded these contracts, and set them out as exhibits.
4. EVIDENCE: introduction of written instrument: proof of execution. None of the answers put in issue the genuineness of the purported signatures of John
Clark thereto. Section 3640 of the Code provides: "When a written instrument is referred to in a
pleading, and the same or a copy thereof is incorporated in
or attached to such pleading, the signature thereto  .   .   .
shall be deemed genuine and admitted unless  .   .   .  a
party to the proceeding  .   .   .  states under oath that he
has no knowledge or information sufficient to enable him to
form a belief as to the genuineness of such signature." In
view of the state of the pleadings, under this statute, plaintiff was not required to make any *prima facie* proof as a
basis for introducing the contracts in evidence. Granting
that the defendants were not precluded from taking the
burden of attack and disproving the genuineness of the signatures, they have failed to show that such contracts were
not authorized. They content themselves with showing that
the name of John Clark was not in his own handwriting.
But in view of the testimony of Rachel Clark, to which we
have already referred, the handwriting of John Clark was
not essential to the validity of such contract. The testimony
of W. G. Clark must also be considered on this question.
He did assume to make these contracts of extension for his
father, and his authority as agent was broad enough for the
purpose, as disclosed by the testimony of his mother.

III. It is said, however, that the contract entered into

by the alleged agent affected real estate, and that parol authority was not sufficient. Without going into the question

5. MORTGAGES:
execution by
agent: ex-
tension of
payment.

of whether parol authority is sufficient to authorize an agent to bind his principal to an instrument affecting real estate, it is sufficient to say that these extension contracts did not affect real estate. The only acts of this agent which could be said 'to affect the real estate of his principal were those relating to the mortgage. If W. G. Clark's testimony is to be believed, his parents were present when he signed the mortgage, and in effect adopted as their own the signatures made by him. Appellees concede that in such a case the rule contended for by them would not apply, and that the act of the agent in such a case ought to be regarded as that of the party himself. *Rex v. Langnor,* 4 B: Ad. 647; *Riley v. Riley,* 36 Ala. 496; *Harris v. Harris,* 59 Cal. 620; *McMurtry v. Brown,* 6 Neb. 368.

We reach the conclusion that the plaintiff is entitled to recover, and the decree of the trial court must therefore be *reversed.*