JAMES WILLIAM RENNE, Appellant, v. NELLIE GLADYS
TUMBLESON et al., Appellees.

No. 44882.

OCTOBER 17, 1939.

Pendleton & Pendleton, and O. D. Nickle, for appellant.

Corbett & Corbett, for appellees.

MITCHELL, J.—This is an action brought by James William
Renne asking that he be adjudged the owner of an undivided
one-third interest in certain real estate as his dower or dis-
tributive share therein and that the same be set off to him
or partitioned by a referee to be appointed for that purpose.
By way of defense it was alleged that the plaintiff did not

acquire in said property any beneficial interest and further the defendants by cross-petition prayed that title to said real estate be quieted in them. There was a trial at which evidence was offered and the lower court entered a decree dismissing the petition and quieting title in the defendants upon their cross-petition. The plaintiff being dissatisfied has appealed and we turn to the record to ascertain the facts.

On December 10, 1904, U. S. Renne, brother of James William Renne, was the owner of certain real estate including a 120-acre farm located near Smithland in Woodbury county, Iowa, which is the property involved in this action. On that date U. S. Renne executed and delivered to his sister-in-law, L. A. Renne, a quitclaim deed to the said property. The deed was duly filed for record in Woodbury county, Iowa, on the 12th day of December, 1904.

On January 4, 1905, L. A. Renne conveyed the same property to U. S. Renne by executing a quitclaim deed. This deed is dated January 4, 1904, but was acknowledged on January 4, 1905, and was filed for record on January 9, 1905. L. A. Renne was a married lady on January 4, 1904, being the wife of James William Renne. They were married in 1885 and they continued to live together as husband and wife thereafter until the death of L. A. Renne on the 24th of March, 1937, leaving the appellant as her surviving spouse. James William Renne did not join in the deed executed by his wife conveying the land back to his brother, U. S. Renne, although he affixed his signature to the deed as a witness to his wife's signature to the deed. Sometime later on U. S. Renne sold the land to innocent purchasers and it was transferred several times, finally passing into the hands of the appellees.

Thirty-five years have passed since this transaction took place and the only witness that knew about the facts is U. S. Renne, brother of appellant, who testified for him. He was an exceedingly willing witness for his brother and on cross-examination time and again refused to answer questions, only doing so at the direction of the trial court.

The record shows that U. S. Renne was a married man on the date that he executed the quitclaim deed to his sister-in-law. That he and his wife were not living together and that sometime later were divorced. U. S. Renne testified that

at the time he executed the deed some "other woman" had sued him for $15,000, and that he did not want "the other woman" who had sued him to get his property so he gave it to his sister-in-law. We quote from appellees' amendment to the abstract from U. S. Renne's testimony.

"Well, at that time, your honor, as I stated I was having considerable trouble with this woman, and there was another woman who had sued me for $15,000, and the fact of the matter is I wasn't owning any property at this time, if I was going to be robbed by the $15,000 judgment I preferred to give the property to my brother's wife which I did."

Within 25 days thereafter U. S. Renne settled the suit that had been brought against him and his sister-in-law, L. A. Renne, immediately executed and delivered to him a quitclaim deed conveying the same property.

It was admitted by U. S. Renne that there was no consideration for either deed. While he does not admit in so many words that there was an arrangement for his sister-in-law to deed back the property, no one can read this record and come to any other conclusion but that there was such an arrangement.

In the case of Johnston v. Jickling, 141 Iowa 444, 450, 119 N. W. 746, 748, this court speaking through Justice Deemer said:

"But it is argued that the trust, if there was one, in J. H. Johnston for his grantor Simpson, was an express one, resting in parol, and that it can not be proved in this proceeding for the reason that the statute (Code, section 2918) provides that such trusts must be in writing, and can not be established by parol testimony. Further, it is argued that the conveyance from Simpson to Johnston was made with intent to defraud his (Simpson's) wife, and was fraudulent and void, although legal and valid as to every one save Mrs. Simpson. It is true, of course, that, generally speaking, an express trust can not rest in parol, and that a fraudulent conveyance is good as between the parties thereto; but it is just as well settled that neither the statute referred to nor the statute of frauds declares a parol trust invalid. These statutes have reference to the character of the evidence which must be adduced as against the holder of the legal title. If the trustee admits the trust

or if the parol trust has been fully carried out and executed, the statute does not apply. Westheimer v. Peacock, 2 Iowa, 528; Merchant v. O'Rourke, 111 Iowa, 351; Karr v. Washburn, 56 Wis. 303 (14 N. W. 189); Eaton v. Eaton, 35 N. J. Law, 290; Hays v. Reger, 102 Ind. 524 (1 N. E. 386); Bork v. Martin, 132 N. Y. 280 (30 N. E. 584, 28 Am. St. Rep. 570); McCormick v. Griffin, 116 Iowa 397; Atkinson v. Hancock, 67 Iowa 452; King v. Bushnell, 121 Ill. 656 (13 N. E. 245); Cresswell v. McCaigg, 11 Neb. 222 (9 N. W. 52).''

''Again, it is argued that, conceding these rules, the testimony shows that Simpson made the conveyance to Johnston to defraud his (Simpson's) wife, and that no court should allow parties who claim under a conveyance made by a fraudulent grantee to establish that fact. If Simpson's wife were the party complaining of the conveyance, this would doubtless be true. But the action before us is brought by the wife of the so-called fraudulent grantee who has reconveyed the land to his grantor, or to another by his direction; and defendants are not bound to prove the fraud in order to establish their defense. All that they need show is that Johnston never had any beneficial interest in the property. They do not have to rely upon the alleged fraud in order to defeat plaintiff's action. It was perfectly competent for them to show by parol that Johnston never had any beneficial interest in the property, and that he reconveyed the property to his grantor or to some one designated by him.''

So in the case at bar, L. A. Renne never had any beneficial interest in the property. It was transferred to her so that U. S. Renne might escape payment of a judgment which he feared would be rendered against him. There was no consideration, and immediately upon the settlement of the claim against U. S. Renne, L. A. Renne deeded back under the same arrangement and this was only 25 days after it had been deeded to her. The appellant knew of the transaction as he signed the deed as a witness to his wife's signature. Clearly L. A. Renne had no beneficial interest in the property. It necessarily follows that the decree of the lower court must be and it is affirmed.—Affirmed.

OLIVER, C. J., and all the JUSTICES concur.